Paul FLUITT, Petitioner,

v.

SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY, Respondent.

No. 79 Civ. 663.

United States District Court, S. D. New York.

Oct. 18, 1979.

Paul Fluitt, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondent; John Martin Weinberg, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving a sentence of a minimum of three years to a maximum of six years, pursuant to a judgment of conviction entered upon his plea of guilty to robbery in the third degree in the State Supreme Court, New York County, petitions for his release by way of federal habeas corpus.[1]

Petitioner (defendant) seeks to void his conviction upon a claim that he was denied due process of law in that (1) the Court denied his motion to withdraw his guilty plea without a hearing, despite his assertion that he was not guilty, and (2) he was denied his right to counsel when his attorney declined to move on his behalf for the withdrawal of the guilty plea, and by the failure of the Court thereupon to appoint substitute counsel. The claims are somewhat interrelated and may be considered against the background of the facts incidental to the *Wade* hearings,[2] the entry of the plea of guilty and the sentencing hearing.

Petitioner was charged in two separate indictments with the crimes of larceny in the third degree, burglary in the third degree and grand larceny committed on two separate occasions. In one indictment, the victim was David Kertes, 91 years of age (Kertes). In the other, the victim was Leon Endin (Endin) also an old man. In each case, petitioner through counsel moved to suppress pre-trial identifications. As to each charge, the *Wade* hearing was conducted separately and successively on the same day, September 2, 1976 before State

---

1. The conviction was affirmed by the Appellate Division, First Department and thereafter leave to appeal to the Court of Appeals was denied.

2. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1976).

Supreme Court Justice Alfred H. Kleinman. In the Kertes case, the investigating detective testified that a neighbor of the victim had identified, from a series of eighteen photographs, petitioner as a man he had observed loitering in front of his apartment building and as the one "involved in the crime; this is the man that did it."

Another detective testified that two days later a lineup was conducted of six persons seated in a room outside of which the same witness, the neighbor, viewed them through a one-way mirror and identified the petitioner as the assailant of Kertes. Two lawyers representing petitioner were present at the lineup. Upon the conclusion of the hearing the Court made a specific finding that neither the photo display nor the physical lineup was tainted in any respect and denied the motion to suppress.

As the hearing in the Endin case was about to commence at an afternoon session, petitioner's counsel referred to the earlier Kertes hearing and said "I would like for the record to object to the fact that the witness himself was not called and produced by the People." The Court responded the statute did not require the prosecution to call any specific witnesses, noting that defendant had the right to call witnesses on his own behalf. The Court, treating the motion as one for reconsideration, denied it.

The Court then proceeded with the Endin hearing. A detective testified that on May 16, 1976 two folders containing approximately fourteen pictures were displayed separately to Endin and his son, out of the presence of one another, and that each, without hesitation, identified the picture of defendant as that of the assailant. Another detective testified that thereafter, on June 3, 1976, a line-up identification procedure took place, participated in by defendant's lawyer who arranged the chairs of the persons to be viewed from outside the room through a one-way mirror. He further testified that the son of the victim made a positive identification of defendant as his father's assailant, and that the father, after a second and closeup view, thought the defendant was his assaulter. In this instance,

too, Justice Kleinman denied the motion to suppress upon a specific finding that neither the photographic display nor the lineup procedure was tainted in any respect by impermissible suggestion.

With matters in this posture the Kertes case was called for trial on February 23, 1977. The defendant was then represented by an attorney other than the one who was his counsel at the *Wade* hearing. During the voir dire of jurors, the petitioner offered to plead guilty to robbery in the third degree to cover all counts of both indictments. The plea was the result of a plea bargain based on extensive discussions which had preceded the offer. The prosecution recommended its acceptance. It contemplated a sentence of three to six years, consecutive to the sentence of four to twelve years under a prior conviction on which defendant was then on parole, with a recommendation to the Parole Board that the sentence to be imposed on the current charge would subsume any period of incarceration that the parole board had the right to impose for violation of his parole.

The Court, after first emphasizing that the Parole Board was not required to accept its recommendation, searchingly questioned the defendant to assure that the offered plea was voluntarily and understandingly made, and that there was a factual basis for the plea. After the prosecutor gave a broad outline of both crimes, he observed that defense counsel "had an opportunity to interview all the identifying witnesses. . . ." The prosecutor then set forth the details of the Kertes charge and the available proof to sustain it. The Court asked the defendant if the facts as stated by the prosecutor were true to which he responded "no" and that he was not guilty of the crime. The Court inquired why he had offered to plead guilty and suggested he talk to his lawyer. The defendant then admitted his guilt and made a detailed statement which established that he had committed the crime charged in the Kertes indictment. The Court made it crystal clear that if it decided a sentence of more than three to six years was warranted the

petitioner had the option to withdraw the guilty plea and stand trial. The plea was accepted and sentencing scheduled for April 6, 1977.

At the sentencing, the prosecutor filed an information charging the defendant with a 1972 conviction of robbery in the first degree as a predicate felony conviction. The defendant acknowledged his prior conviction but then announced he wished to withdraw his guilty plea and that he had conferred with his counsel with respect thereto. His lawyer noted that he had previously informed the Court that he could not in good faith make such a motion. The Court stated it would appoint new counsel but suggested that counsel continue to represent defendant for the purpose of the application and observed that it saw no conflict between defendant and counsel at that time. Counsel replied that the defendant's application might pose a conflict to which the Court responded "not necessarily" since the basis of defendant's application was not known.

The defendant then said that he had pled guilty not because he was guilty but "because of distress," the denial of his *Wade* application and the ineffective representation of his counsel at that hearing in the failure to subpoena witnesses.[3] Counsel, in response to the Court's inquiry, stated that the defendant had been advised of his rights. The Court then asked counsel if he were thoroughly convinced that the previously entered plea was "a true expression of this defendant's desire to plead guilty," to which counsel responded, "This is a problem, your Honor. I don't want to close the door on this guy because of a statement I should make. . . . How could I be making a motion . . . and then closing the door."

The Court thereupon stated:

I have reviewed the record in this case. I'm aware of the fact that the plea took place during the course of the selection of the Jury. And the allocution in this case was thorough. The facts were gone through with this defendant. He was asked whether he pleads guilty because he is guilty.

The Court is absolutely satisfied that the allocution contained therein thoroughly covered this particular matter and the Court is absolutely convinced that you, as counsel for this defendant, recognizing the vigor in which you pursued the defense of this defendant would not in any way take the plea in this Court unless you were thorougly [sic] convinced that this defendant wished to plead guilty.

. . . . . .

The Court has read through the allocution. This defendant has not in any way indicated to this Court any reason for withdrawing the plea.

He's indicated his guilt in this particular matter. Before the plea was taken he discussed it throughly [sic] with counsel. He discussed it and was permitted to call his mother. He came back here and readily and willingly admitted his guilt. The allocution speaks for itself in this particular matter.

The Court further observed that to permit the withdrawal of the plea would result in a delay which would unduly prejudice the prosecution of the case since the complainant was a 91 year old man and there had been trouble bringing him to court when the trial was about to proceed. The Court then denied petitioner's motion to withdraw the guilty plea, upon a finding that the defendant's stated reasons for withdrawal of the plea had no basis in fact. The Court again emphasized that before the plea was taken there had been numerous conferences between defendant and his counsel; that the Court would not have accepted the plea unless the defendant had indicated that he was guilty of the crime; and that counsel would not have recommended the plea if he had not been convinced by the defendant of his guilt. Finally, the Court opined that

3. Counsel other than the one who then and at the entry of the guilty plea represented petitioner.

the motion for withdrawal was an effort by defendant to have an arguable point on appeal.

The Court thereupon ordered the defendant arraigned for sentence and first heard the prosecutor who vehemently denounced defendant as one who made a specialty of robbing the aged. Next, defense counsel, in rebuttal of the denunciation by the prosecutor, made a strong plea for the defendant. Finally, defendant spoke on his own behalf and took issue with a number of charges made by the prosecutor in his remarks. The Court pronounced sentence, noting it was in accordance with the plea bargain.

 The defendant's first contention of violation of his right to due process is the denial by the Court of his motion to withdraw his guilty plea and the failure to accord him a hearing thereon. The above detailed recital of events demonstrates that petitioner, with counsel at his side, voluntarily, knowingly and understandingly entered his guilty plea and petitioner has presented no evidentiary matter to impugn the Court's finding to this effect. In such circumstance, there was no absolute right of withdrawal of the plea; the matter rested in the Court's sound discretion[4] just as it does in the federal courts. A state habeas corpus petitioner whose motion to withdraw a guilty plea has been denied and rejected by the State's Appellate Courts, is not entitled to federal relief absent "a clear issue of constitutional dimensions."[5] Here the Court, in denying the motion for withdrawal, not only found it was voluntarily and knowingly entered but that the reasons advanced for withdrawal had no basis in fact. Thus the Court's denial of his motion not only was a proper and fully justified exercise of its discretion but there is no factual support to sustain the claim of constitutional invalidity of the plea.

 Nor did the failure of the Court to conduct an evidentiary hearing violate petitioner's constitutional right of due process. With respect to a motion to withdraw a guilty plea, "[t]he nature and extent of the fact-finding procedures requisite to the disposition of such motions rest largely in the discretion of the Judge to whom the motion is made. Only in the rare instance will a defendant be entitled to an evidentiary hearing; often a limited interrogation by the Court will suffice. The defendant should be afforded reasonable opportunity to present his contentions . . . ."[6] Here the petitioner was afforded such an opportunity and his counsel also spoke on his behalf. While counsel did not join in his application, petitioner's grounds for withdrawal of his plea were adequately presented.[7] Each was considered and none required a trial-type hearing. His assertion of innocence, uttered without evidential support, was entirely at odds with his detailed statement of how he committed the crime made at the time he pled guilty. The accuracy of that admission set forth in the transcript of the plea session is not disputed.[8] His bare statement that he pled "because of distress" did not require a hearing. This too was contradicted by the admitted

4. N.Y.C.P.L. § 220.60(3) (McKinney's Supp. 1978). *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109–10 (2d Cir. 1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971); *United States ex rel. Rosa v. Follette,* 395 F.2d 721 (2d Cir.), *cert. denied,* 392 U.S. 892, 89 S.Ct. 111, 21 L.Ed.2d 172 (1968); *United States v. Hughes,* 325 F.2d 789 (2d Cir.), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964); *United States ex rel. Best v. Fay,* 239 F.Supp. 632 (S.D.N.Y.1965), *aff'd,* 365 F.2d 832 (2d Cir. 1966), *cert. denied,* 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967).

5. *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 110 (2d Cir. 1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).

6. *People v. Tinsley,* 35 N.Y.2d 926, 927, 365 N.Y.S.2d 161, 162, 324 N.E.2d 544 (1974).

7. *See United States ex rel. Brown v. LaVallee,* 424 F.2d 457, 464 (2d Cir. 1970) ("We have considered the argument concerning effective assistance of counsel . . . and find it without merit. From the sentencing minutes, it appears that the trial Judge was fully apprised of [petitioner's] position by [petitioner] himself.").

8. *Cf. Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *United States v. LaVallee,* 319 F.2d 308, 312 (2d Cir. 1963).

fact of numerous and extensive conferences with his lawyer and of his telephone conference with his mother before entering his plea. Moreover, "distress" without more, does not entitle one to a hearing. If that were the rule every defendant's application to withdraw a plea of guilty would automatically have to be granted. "Distress" and "nervousness" are the characteristics of most persons facing immediate trial under a criminal prosecution.[9] To accept such a normal emotional reaction as a ground to vitiate a plea entered only after extensive questioning of a defendant to assure its constitutional validity, would make a shambles of the guilty plea procedure. Indeed, the Supreme Court has observed that "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." [10]

Finally, his claim that the denial of his *Wade* motion and the alleged incompetency of his lawyer in failing to subpoena witnesses induced his guilty plea is as shallow as the other grounds advanced. The *Wade* motion had been heard and denied eight months before the case had been called for trial. Substituted counsel thereafter represented him. New counsel had moved for re-argument of the denial of the suppression motion long before the trial. The matter had been "discussed in great length by you [substituted counsel] before this Court and in the presence of the defendant." His own counsel stated that any constitutional claim with respect to the matter would be preserved for appeal had defendant proceeded to trial and been convicted. However, after consultation with his counsel as to this and other matters, fully advised of his constitutional rights, and no doubt taking into account his prior criminal record,

his status as a parolee, the likelihood of conviction and the prospect on appeal, and the benefit of the plea covering the two indictments, petitioner decided to plead. That it was a deliberate and calculated decision cannot be seriously challenged. It is significant that petitioner, at the time he moved to withdraw his plea and even on this application, has studiously avoided any reference to what advice in fact he did receive from his counsel, whose competency is not questioned. He has offered no affidavit with respect thereto from his attorney nor any explanation for his failure to do so.[11] Petitioner has not submitted anything which in any way impugns the advice he may have received from his experienced and competent attorney.

■ In light of the foregoing, petitioner's additional contention that he was denied his right to counsel when his attorney did not make or join in the motion for withdrawal and the Court failed to substitute new counsel, requires little discussion. Petitioner's counsel displayed a fine sensitivity for petitioner's interest. His statement to the Court that he could not in good faith make a motion for the withdrawal of the plea, as much as anything, suggests the frivolity of petitioner's effort to change his plea. Yet the attorney scrupulously avoided doing or saying anything which might impede the petitioner's pro se motion. When the attorney suggested that there might be a conflict by reason of the defendant's application, the Court remarked "not necessarily" and the attorney continued to represent petitioner. The Court was correct. The fact is that petitioner's claims were heard. Counsel also brought to the Court's attention matters bearing on the application.

9. *Cf. United States ex rel. Irving v. Henderson,* 371 F.Supp. 1266, 1277 (S.D.N.Y.1974); *United States ex rel. Best v. Fay,* 239 F.Supp. 632 (S.D.N.Y.1965), *aff'd,* 365 F.2d 832 (2d Cir. 1966), *cert. denied,* 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967); *United States v. Kahaner,* 203 F.Supp. 78, 87 (S.D.N.Y.1962).

10. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). *See also United States ex rel. Brown v. LaVallee,*

424 F.2d 457 (2d Cir. 1970), *cert. denied,* 401 U.S. 942, 91 S.Ct. 946, 28 L.Ed.2d 223 (1971).

11. *United States ex rel. Rosen v. Follette,* 409 F.2d 1042, 1045 (2d Cir. 1969), *cert. denied,* 398 U.S. 930, 90 S.Ct. 1822, 26 L.Ed.2d 93 (1970); *United States ex rel. Brooks v. McMann,* 408 F.2d 823, 826 (2d Cir. 1969); *United States ex rel. Brock v. LaVallee,* 306 F.Supp. 159, 162 (S.D.N.Y.1969).

■ That petitioner at the time of the sentence hearing differed with his counsel did not in and of itself require the appointment of new counsel as long as he was adequately represented, as indeed he was. As our Court of Appeals has stated:

> "[C]hange in representation, once proceedings have begun, is necessarily not absolute under any and all conditions . . . . Nor can every disagreement with counsel's version of statements to a defendant require a halt in the proceedings and the briefing of substitute counsel." [12]

The only matter that remained open following denial of the motion to withdraw the guilty plea was the imposition of sentence. The record leaves no room to doubt that the attorney fully, fairly and competently represented the defendant in urging upon the Court consideration of extenuating circumstances. Indeed, as already discussed, despite the viciousness of the crime and petitioner's prior criminal record, the attorney was a vigorous advocate of his client's cause.

■ The entry of a guilty plea is a solemn matter involving the surrender of fundamental constitutional rights. In and of itself it is a conviction and like a jury verdict is conclusive.[13] It is for this reason that the Supreme Court has rigidly enforced the constitutional right of defendants to due process when pleas of guilty are tendered.[14]

■ This policy, to assure that guilty pleas are truly voluntary, is reflected by the searching inquiry that is mandated upon federal courts under Rule 11 of the Federal Rules of Criminal Procedure.[15] When such a plea has been entered pursuant to such safeguards, it should not be vacated except for constitutional infirmity or other substantial reasons. Plea arrangements are recognized as essential to the effective administration of justice.[16] Properly administered, it is to be encouraged. It has advantages for both the prosecution and the accused.[17] Defendants and their lawyers should understand that the entry of a guilty plea is not an idle ceremony but a solemn proceeding not to be set aside at the whim of a defendant who may have had a change of heart. In this instance, the record indicates that the trial justice before accepting the plea meticulously made the appropriate inquiry to satisfy all constitutional requirements and no substantial reason, supported by any evidentiary facts, having been advanced for its vacatur, the plea should stand; otherwise, we encourage "great waste of judicial resources required to process the frivolous attacks on guilty plea convictions . . . ."[18]

The Court concludes that petitioner's charges, whether considered singly or in totality, fail to establish that he was deprived of any right cognizable under federal habeas corpus.

The petition is dismissed.

---

12. *United States ex rel. Robinson v. Fay,* 348 F.2d 705, 707–08 (2d Cir. 1965), *cert. denied,* 382 U.S. 997, 86 S.Ct. 583, 15 L.Ed.2d 484 (1966). *Accord, United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).

13. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1926).

14. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

15. *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1968); *United States v. Journet,* 544 F.2d 633 (2d Cir. 1976).

16. *United States ex rel. Brown v. LaVallee,* 424 F.2d 457, 462 (2d Cir. 1970); *United States v. Follette,* 395 F.2d 721, 724 (2d Cir. 1968).

17. *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

18. *McCarthy v. United States,* 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418 (1969).