SCHWARTZ, Judge.
After evidentiary hearing, the trial court granted the appellee’s Fla.R.Crim.P. 3.850 motion to vacate the convictions and sentences which followed his guilty and nolo pleas, on the stated ground[1] that Brest was “totally confused and afraid”[2] when he entered the pleas over a year earlier before another judge.[3] The state appeals.
*640 We conclude that the lower court’s findings, which were in turn based entirely upon the defendant’s own conclusory and subjective[4] statements that he was upset, *641 confused and frightened at the hearing,[5] were legally insufficient to justify the ultimate determination that the pleas were not knowingly and understandingly entered and *642 were thus fatally involuntary — in the face of the unequivocal demonstration in the plea colloquy[6] to the contrary. We consider that Judge Weinfeld’s perceptive remarks in Fluitt v. Superintendent, Green Haven Correctional Facility, 480 F.Supp. 81 (S.D.N.Y.1979) are clearly applicable here:
“[Distress” without more, does not entitle one to a hearing. If that were the rule every defendant’s application to withdraw a plea of guilty would automatically have to be granted. “Distress” and “nervousness” are the characteristics of most persons facing immediate trial under a criminal prosecution. To accept such a normal emotional reaction as a ground to vitiate a plea entered only after extensive questioning of a defendant to assure its constitutional validity, would make a shambles of the guilty plea procedure. Indeed, the Supreme Court has observed that “a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.” • [footnotes omitted].
480 F.Supp. at 86. As this court held in the controlling case of State v. Pinto, 273 So.2d 408 (Fla. 3d DCA 1973), cert. dismissed, 283 So.2d 367 (Fla.1973),
[a] defendant often pleads guilty after consultation and advice from his attorney. Such a decision is a tactical one and[5] may not be whimsically revoked at a later time. Belsky v. State, Fla.App.1970, 231 So.2d 256; Simpson v. State, Fla.App. 1964, 164 So.2d 224. Where, as here, the guilty plea was entered upon advice of counsel and where the record shows a full examination by the court and the defendant’s concurrence in the plea, the record clearly refutes the defendant’s later assertion that the plea was not voluntary.
273 So.2d at 411. See White v. State, 244 So.2d 499 (Fla. 1st DCA 1970); O’Quinn v. State, 364 So.2d 775 (Fla. 1st DCA 1978), cert. denied, 373 So.2d 460 (Fla.1979). See generally Williams v. State, 316 So.2d 267 (Fla.1975).
For these reasons, the order below is reversed with directions to reinstate the defendant’s convictions and sentences.
Reversed.

. The sole ground asserted in the motion itself, which was specifically rejected below, was the alleged ineffectiveness of the defendant’s appointed counsel. Our disposition of the case makes it unnecessary to consider the effect of the fact that the order under review was entered upon a claim, that of involuntariness, which was never advanced by the defendant himself. But cf. Douglas v. State, 326 So.2d 33 (Fla. 1st DCA 1976).

. At the end of the 3.850 hearing, the court said:
THE COURT: There is no point in making any argument.
This is based upon my being convinced by the defendant’s testimony and the plea colloquy that the defendant was totally confused and afraid at the time he entered this plea, therefore, the plea was not freely and voluntarily made; so that’s the basis for this ruling. The motion is granted.

. After the prosecutor, defense counsel, and the sentencing judge agreed in open court to the terms of the plea negotiations — which included abandoning several felony charges against the defendant — the court meticulously conducted the following colloquy:
THE COURT: Jeffry Brest also known as Roger Allen and also known as Jay Vonner. What is happening with that?
MR. BURFORD: There have been plea negotiations.
MR. ROBBINS: There has been a plea negotiation with the State, based on the State’s agreement to limit the charge on the Jay Von-ner case to one charge of aggravated assault. They will abandon the other charge. And to drop the case—
MR. BURFORD: No. No.
MR. ROBBINS: The one with the ticket, the credit card.
MR. BURFORD: Credit card? I didn’t agree to that.
THE COURT: What are you doing?
MR. BURFORD: Pleading in.
MR. ROBBINS: Wait a second, Judge. I am sorry. I misunderstood and I told the Defendant that isn’t so.
THE COURT: Tell him different in a hurry. Let’s do it right now.
He knows what his druthers are.
MR. ROBBINS: Judge, I told my client already that they were dropping—
THE COURT: But they say they aren’t now. Now, see what he wants to do. It’s his life, quite literally, from looking at the number of these charges.
MR. BURFORD: Pleading to a PSI and a cap, Judge. I don’t see where it makes much differ-
^MR. ROBBINS: All right, Judge.
All right, then he will agree to take the charges. Then, it would be the charge for—
THE COURT: Why don’t we take it one case at a time so I can get a coherent calendar here.
Case number 78-13217 under the name of Jeffry Brest. What is the charge to which he is pleading?
MR. BURFORD: Two counts, I believe, Your Honor.
THE COURT: There are only two counts. He is pleading to both counts?
*640 MR. ROBBINS: Yes.
THE COURT: 78-11940, under the name of Roger Allen. I don’t even know what he is charged with.
MR. BURFORD: Leaving the scene of an accident with injury.
MR. ROBBINS: That’s no contest.
MR. BURFORD: I have no objection to pleading no contest.
There is civil litigation.
THE COURT: All right.
There is one count in that Information.
MR. ROBBINS: One count.
THE COURT: And in Jay Vonner, case number 78-15962, what’s he pleading to?
MR. ROBBINS: To the aggravated assault.
THE COURT: Count II, aggravated assault.
And you are abandoning the others?
MR. ROBBINS: Yes.
MR. BURFORD: That’s correct.
MR. ROBBINS: The agreement is a five year cap with PSI.
THE COURT: All right.
Swear him.
THE CLERK: Raise your right hand, please.
[Thereupon, the Defendant was sworn.] ■
THE COURT: Which is the right name?
THE DEFENDANT: Jeffry Brest.
THE COURT: Mr. Brest, do you understand you are under oath?
THE DEFENDANT: Yes, ma’am.
THE COURT: Do you understand what is happening here in Court today?
THE DEFENDANT: Yes, ma’am.
THE COURT: Do you have any physical or mental defects that would prevent you from understanding what is happening here in Court today?
THE DEFENDANT: No, ma’am.
THE COURT: Are you entering your plea— as to two cases, guilty, and as to one, nolo contendere, freely and voluntarily and because you desire to do so and for no other reason?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Anyone threaten you or force you to get you to enter those pleas?
THE DEFENDANT: No, Your Honor.
THE COURT: You understand that a plea of nolo contendere is tantamount to that of a guilty plea? In other words, I will be finding you guilty on your nolo contendere plea; I will not be finding you not guilty. Do you understand that?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Do you understand, sir, and has it been explained to you by your counsel, as has been explained here in open Court, that he, on your behalf, together with representatives of the law enforcement agencies, have entered into negotiations with regard to your case and have recommended to the Court that the Court obtain a Presentence Investigation and base its sentencing of you upon that Pre-sentence Investigation, together with an analysis of the cases, but that in no event would you be sentenced to more than five years in the State Prison. Do you understand that?
THE DEFENDANT: Yes, Your Honor.
THE COURT: So it is clear to you, sir, that you could be going to prison for five years?
THE DEFENDANT: Yes.
THE COURT: You understand that?
THE DEFENDANT: [Defendant nods head.]
THE COURT: Do you understand, sir, that by pleading guilty and by pleading nolo conten-dere, you are waiving your right to trial; your privilege against self-incrimination; your right to confront those who have accused you of a crime; and your right to an appeal?
THE DEFENDANT: Yes.
THE COURT: Are you satisfied with the services of your attorney and have you had plenty of time to talk to him?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Counsel, satisfied he understands the nature of the charge and the consequences of the plea?
MR. ROBBINS: Yes, ma’am.
THE COURT: Waiving proffer; stipulating the Information states a prima facie case?
MR. ROBBINS: Yes, ma’am.
THE COURT: Give me a proffer on the one that’s noloing.
MR. BURFORD: That’s the name of Roger Allen, case number 78-11940.
THE COURT: 11940.
MR. BURFORD: Specifically, Your Honor, on August 5th, 1978, the Defendant was driving a vehicle; struck another vehicle, actually a Moped, driven by Mr. Orville Marcum. The Defendant exited his vehicle; saw the victim laying on the street; got back into his vehicle and left the scene.
THE COURT: Mr. Brest, are you specifically admitting on the 9th of August, 1978, forging a credit card receipt, forging the name of Joan Cronin, contrary to the Florida law, and uttering that same credit card receipt to Chevron on that same date, contrary to the Florida law?
THE DEFENDANT: Sure.
THE COURT: And are you specifically admitting on October 16, 1978, committing an aggravated assault upon Caren Muller Riverio [phonetic], contrary to the Florida law?
THE DEFENDANT: Yes, Your Honor.
THE COURT: Okay.
In accordance with the negotiations; ask for a Presentence Investigation; entering the finding of guilt at this time as to all three cases; set sentencing, for April the 6th, 9:00 o’clock in the morning, [emphasis supplied]

. See and compare United States v. Roberts, 570 F.2d 999, 1008-09 (D.C.Cir.1977), and cases cited at nn. 35-36.

. The only evidence upon which the appellee now relies occurred upon his cross-examination, see n. 1, supra, by the state attorney:
Q. And were you taking Dilantin at the time you entered the guilty plea in Court?
A. I was.
* * * * * *
Q. There was nothing about taking the drug, nothing about the fact that you were taking that drug that rendered you incapable of understanding what was going on; is that correct? You have to answer out loud.
A. That’s correct. In fact, Dilantin, itself, did not affect my understanding of what was going on.

[Defense Attorney]
Q. Is it true that part of your treatment for your neurological problem included taking phenobarbital?
A. I believe they were giving me phenobarbital and Dilantin.

[Prosecutor]
Q. Did it affect your understanding of what was going on?
A. The whole idea—
Q. You didn’t know what was going on, right?
A. Not really.
* * * * * *
[Prosecutor]
Q. You recall the Court asking you if you understood what was happening in Court here today and your answer was, yes, that you did understand what was going on that day?
A. I understood what was going on when I left the jury room after Mr. Robbins had assured me what my actual plea would be. I was in a total state of confusion when I was in front of the judge, because after I pled, Mr. Robbins told me that the State had accepted and Mr. Burford stated, I believe it was, ‘Wait a minute. We have 24-hour credit card.’ I was in a state of confusion.
* * * * * *
Q. At the time you entered the plea, isn’t it true you clearly understood exactly what you were pleading guilty to. In fact that you were pleading guilty to aggravated assault and all of the cases involving the burglary with the assault and batteries on police officers, those cases; didn’t you understand that?
A. I understood I was pleading guilty to aggravated assault.
Q. All the rest of the charges were being dropped?
A. That’s what Mr. Robbins told me.
Q. You understood that, right?
A. Yes, that’s what he told me.
Q. Did anybody force you to enter this plea?
A. Force me?
Q. Yes.
A. No.
Q. So, you did it voluntarily, correct?
A. I pled guilty to aggravated assault, and that’s all I assumed at that time Mr. Robbins advised me I was pleading guilty to.
Q. You pled into it because you wanted to plea into it and the State was dropping all the charges?
A. I pled guilty on that day, because I totally was frightened of Judge Morphonios, period. And that’s why I pled guilty, to anything.
Q. You understand at the time you pled guilty that you could be sentenced up to five years in State prison?
A. Mr. Robbins, I would do thirty years, so I was frightened of Judge Morphonios and that’s why I pled guilty.
Q. Do you recall this, the Court telling you or asking you if you understood what your counsel had been explaining—
. A. I think that’s standard procedure. I’m sure if that is in the transcript, I said it.
Q. When you were entering your plea, you completely understood?
A. He advised me of the plea with a 5-year cap, that Judge Durant was in the hospital, and that if he returned, he would sentence me; and I would not get the five years or anything.
Q. So basically, you were afraid in front of Judge Gable, and you wanted to enter a plea of guilty as opposed to what you might have done had you been in front of Judge Durant?
A. No. I entered a plea of guilty, because I was totally frightened. My intention was to go in front of any judge to trial.
Mr. Robbins assured me I should not plea guilty, that we were taking everything to trial; but when I got in front of Judge Mor-phonios, he told me there was a different ball game, that I should plead guilty. I was totally confused.
Q. Totally confused, and you were satisfied with the way things were going?
A. No.
Q. You were dissatisfied with the way-things were going in the courtroom?
A. I think when I was in the courtroom, I don’t think I was in the proper state of mind to be satisfied or dissatisfied. It didn’t hit me until two days later, what I had done.
Q. At the time you entered the plea, you were satisfied with what was happening?
A. At the time I entered the plea, I was incapable of any logical decisions.
*642 Q. Why was that?
A. Because I was totally confused, totally afraid and I believe I was suffering from a diminished state of mental capacity, too.

. See n. 3, supra.