SCHOONOVER, Acting Chief Judge,
dissenting.
Although I agree that appellate courts are not in a position to fully determine the credibility of witnesses and that we are not at liberty to reweigh evidence presented to the trial court, these principles do not control the disposition of this appeal. I, therefore, respectfully dissent.
Our function in this case is to determine if there was sufficient, competent evidence presented to the trial court from which he could properly find that the plea entered into by the appellee approximately five years earlier should be set aside. For the reasons hereafter set forth I would hold as a matter of law that the testimony presented by the appellee (himself and two of his cell mates) was not legally sufficient to carry the appellee’s burden to establish that the original trial judge erred by accepting the appellee’s plea. It was that judge who was in a position to fully determine the credibility of the witnesses and weigh the evidence presented to him when he accepted the appellee’s plea to first degree murder.
On July 20,1988, the appellee was arrested and charged with the crime of first degree murder. The appellee, after being advised of his constitutional rights, admitted killing Barbara Friedman, loading her body into a vehicle, and then hiding it in a wooded area. The appellee took the law enforcement offi *566 cers to the area and showed them where he had placed the body.
On October 2, 1989, the appellee withdrew his previously entered plea of not guilty and pled guilty to the charge of first degree murder. The court accepted the appellee’s plea and on the same day sentenced him to serve life in prison without the possibility of parole for twenty-five years. In exchange for this plea, the state waived the right to seek the death penalty.
More than a year later, on May 3, 1991, the appellee filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The appellee’s motion was summarily denied by the trial court.
In Reutter v. State, 590 So.2d 1133 (Fla. 2d DCA 1992), this court reversed and held that two allegations contained in the appellee’s motion were facially sufficient. We said that his allegation that his guilty plea to capital murder was involuntarily given because he was under the influence of psychotherapeutic medication at the plea hearing and did not understand what he was doing was facially sufficient. We also held that the appellee’s allegation concerning ineffective assistance of counsel was facially sufficient. We concluded that the attachments to the court’s denial of the appellee’s motion did not conclusively refute these allegations and remanded for further proceedings.
Upon remand, the trial court first ordered the state to file an answer to the appellee’s motion and then conducted an evidentiary hearing. At the conclusion of the hearing, the court granted the appellee’s motion, withdrew his guilty plea, and granted him a new trial.
In the trial court’s order granting postcon-viction relief, the court made the finding that the appellee had met his burden of producing substantial evidence sufficient to support the conclusion that the effect of the medication given to him prevented him from understanding the full consequences of his plea. The court also found that defense counsel was ineffective for failing to correct the ap-pellee’s misstatements during the plea colloquy because that caused the sentencing judge to make findings of voluntariness and competency based upon inaccurate information. The state filed a timely notice of appeal.
Although the majority concludes that the appellee presented sufficient evidence to sustain the trial court’s ruling, I believe that the record reflects that the original plea was valid and that the evidence presented by the appellee at the evidentiary hearing was not sufficient to invalidate it for the reasons set forth by the appellee.
In order to determine if the appellee’s original plea was valid it is necessary to review the record and ascertain the facts leading up to the appellee’s plea and the plea itself.
On July 20,1988, the appellee was arrested and charged with the first degree murder of Barbara Friedman earlier that day. The appellee confessed to killing her and hiding her body. The next day the appellee executed a request for medical attention and from that day until more than a year later when he left the county jail to begin serving his sentence, he was treated pursuant to section 951.22, Florida Statutes (1987), and the rules and regulations of the Department of Corrections. Less than a week after the murder, he was diagnosed as having an adjustment disorder and psychotropic drugs, including Sinequan, were given to him on nearly a daily basis for the more than a year he was incarcerated in the county jail. Prior to the instant action, there was no indication that the administration of Sinequan caused the appellee any problems. He attended hearings, spoke to the court and prepared, filed, and signed pleadings without being questioned as to his competency, except to request a private examination which resulted in no further action in that regard. Fla.R.Crim.P. 3.210(b). He wrote the trial judge a letter which the judge acted upon and attended a hearing and spoke to the court on days that Sinequan was given to him in the same dosage he received on the day of his plea. The appellee conferred in person and by telephone with his attorney many times and asked him to try to negotiate a plea that would insure him that he would not receive the death penalty.
*567 The appellee’s attorney was successful in his efforts to avoid a trial which could have resulted in the death penalty and an agreement complying with the rules of criminal procedure was entered into. Florida Rule of Criminal Procedure 3.171 requires the prosecuting attorney to apprise the trial judge of all material facts known to him about a defendant’s background. Fla.R.Crim.P. 3.171(b). The same rule requires the defense attorney to obtain his client’s full and complete consent to an agreement, being certain that any decision to plead guilty or. nolo contendere is made by the defendant. He must advise his client concerning all pertinent matters bearing on the choice of which plea to enter and the particulars attendant upon each plea and the likely results thereof. Fla.R.Crim.P. 3.171(e). The same rule then states that after an agreement has been reached, the trial judge may have made known to him or her the agreement and reason therefore prior to the acceptance of the plea. Fla.R.Crim.P. 3.171(d).
The appellee on the day he pled, signed a form in the presence of the trial judge, the prosecuting attorney, and his counsel. The portions of that form which are material to our issue on appeal provides:
1. I, _, defendant herein, withdraw my Plea of Not Guilty, and enter a plea of
(x) Guilty ( ) Nolo Contendere to First Degree Murder.
2. I understand that if the Court accepts the Plea, I give up my right to a trial, at which I would have had the following rights: (1) to have a jury determine whether I am guilty or not guilty, or a hearing before a judge if charged with violation of probation; (2) to see and hear the witnesses testify, and to have my lawyer question them for me; (3) to subpoena and present witnesses and items of evidence in my defense, and to present any defense I might have to the jury; (4) to testify or to remain silent; and (5) to require the prosecutor to prove my guilt by admissible evidence beyond any reasonable doubt, or to the satisfaction of the Court’s conscience if charged with violation of probation, before I can be found guilty. I further understand that I give up my right to appeal all matters except the legality of my sentence or this Court’s authority to hear this case. My lawyer has explained to me what an appeal is.
3. I understand that a Plea of Not Guilty denies that I committed the crime; a Plea of Guilty admits that I did commit the crimes; a Plea of Nolo Contendere (or “No Contest”) says that I do not contest the evidence against me. I understand that if the Court accepts my plea there will be no trial and the Court will impose sentence based upon my plea.
4. I have read the information/indietment/warrant in this case and I understand the charge to which I enter my plea. My lawyer has explained to me the maximum penalty for the charge, the essential elements of the crime, and possible defenses to the crime, and I understand the rulings. I understand that if I am on parole, my parole can be revoked and I can be returned to prison to complete that sentence; if I am on probation, my probation can be revoked and I can receive a separate sentence up to the maximum on the probation charge in addition to the sentence imposed on this case.
5. No one has promised me anything to get me to enter the plea, except
b. ( ) The prosecutor has agreed: life imprisonment without the possibility of parole for 25 years.
c. ( ) The Court has agreed: as above.
6. No one has pressured or forced me to enter the plea. I am entering the plea because
(x) I believe it is in my own best interest.
I enter the plea voluntarily of my own free will.
10. My education consists of the following: H.S. grad. I am not under the influence of any drug, medication or alcohol at the time I sign this plea. I am not suffer *568 ing from any mental problems at this time which affect my understanding of this plea.
11. I have read every word in this written plea. I have discussed this written plea with my lawyer and I fully understand it. I am fully satisfied with the way my lawyer has handled this case for me.
SWORN TO, SIGNED AND FILED in Open Court in the presence of defense counsel and Judge, this 2 day of October, 1989.
JED PITTMAN Clerk of the Circuit Court
(Signed by Defendant) Defendant’s Signature
By: - Deputy Clerk Address: Telephone:
Certificate of Defendant’s Attorney
I, Defendant’s Counsel of Record, certify that: I have discussed this case with defendant, including the nature of the charge, essential elements of each, the evidence against him/her of which I am aware, the possible defenses he/she has, the maximum penalty for the charge and his/her right to appeal. No promises have been made to the defendant other than as set forth in this plea or on the record. I believe he/she fully understands this written plea, the consequences of entering it, and that defendant does so of his/her own free will.
(Signed by Defense Counsel) Counsel for Defendant

Certificate of Prosecutor

(1) I confirm that the promises set forth in Paragraph 5(b) have been made. (Signed by Assistant State Attorney) Assistant State Attorney
After the judge waited for the appellee to sign the agreement, the appellee was placed under oath and the trial court determined the voluntariness of his plea pursuant to rule 3.172. See Suarez v. State, 616 So.2d 1067 (Fla. 3d DCA 1993). After determining that the appellee was alert and intelligent and understood the plea agreement which set forth the requirements of rule 3.172(e), and that he understood the consequences of the plea, the trial court accepted the plea and the appellee was sentenced to serve life in prison without eligibility for parole for twenty-five years.
The trial judge, and not the judge who ruled on the appellee’s motion for postconviction relief, observed the appellee’s demeanor, and had the record before him when determining that the appellee voluntarily and intelligently entered into a plea that saved him from the possibility of the death penalty. I would find that the plea was valid. Furthermore, based upon the allegations in his motion filed more than a year later, and the evidence presented at the evidentiary hearing, I would not change this conclusion.
The appellee’s motion alleged that his plea was invalid because, contrary to his sworn testimony and the plea agreement, he was taking Sinequan at the time of his plea and that the drug affected his understanding of the nature and consequences of his plea. It should be noted that the appellee did not allege that he was suffering from any mental disease or disorder that affected his understanding. The issue is solely whether the medication Sinequan affected the voluntariness of his plea.
The appellee’s burden at the evidentiary hearing was to present substantial evidence that he was taking the medication Sinequan at the time of the entry of his plea, that the medication’s influence on him prevented him from having a full understanding of the significance of his plea, and that he would not have entered his plea had his mental faculties not been diminished. Gunn v. State, 379 So.2d 431 (Fla. 2d DCA 1980). Although the appellee presented competent evidence that *569 he was taking the drug Sinequan, he did not present sufficient evidence that he did not understand the nature and consequences of his plea.
Evidence was presented at the evidentiary hearing which proved that the appellee had been prescribed the drug Sinequan. After the appellee was incarcerated in the county jail, he complained of sleeplessness and weight gain. Dr. Thieman, the psychiatrist at the county jail, testified he prescribed Sinequan which was an antidepressant for the appellee’s “adjustment disorder.” The appellee took 300 milligrams a day, 100 during the day and 200 at bedtime so that he could sleep.
With regards to the voluntariness of his plea, treatment with antipsychotic drugs does not per se render a defendant incompetent to stand trial. Sheley v. Singletary, 955 F.2d 1434 (11th Cir.1992). The use of drugs is merely a relevant factor in the trial judge’s determination. Fallada v. Dugger, 819 F.2d 1564 (11th Cir.1987).
Dr. Thieman testified as to the appellee’s competence and stated that someone of the appellee’s size who was taking the same dosage of Sinequan that the appellee was taking would have no problem with his ability to think clearly and intelligently. The reports from the nurses who treated the appellee indicated that the appellee offered no complaints. Dr. Thieman observed no negative side effects in the appellee. Dr. Thieman testified that the appellee denied having any side effects. Also, the appellee was not required to take the medication and in fact began refusing the medication about a month before he entered the plea.
In addition to Dr. Thieman, the state presented the expert testimony of Dr. Gonzalez. Dr. Gonzalez was a psychiatrist with extensive experience in treating patients with Si-nequan. He reviewed the transcript of the plea hearing and the appellee’s medical records. Dr. Gonzalez testified that the typical side effect of Sinequan was drowsiness and that the side effects would have been apparent to anyone around the appellee such as the defense attorney and the trial judge. Therefore, the trial judge had an adequate opportunity to observe his demeanor. See Sheley, 955 F.2d at 1439. After reviewing the records, Dr. Gonzalez stated his opinion was that the appellee was not suffering from any cognitive difficulties at the time of his plea. Dr. Gonzalez also testified that since the appellee answered the trial court’s questions in the manner the defense attorney instructed him to answer, the appellee therefore had the ability to reason.
The appellee’s trial attorney testified that he had at least six conversations with the appellee regarding the plea negotiations and that the appellee appeared to be clear headed and capable of communicating in an intelligible manner. The trial attorney also testified that at the time he discussed the plea form with the appellee that the appellee did not indicate he was having cognitive difficulties or that he did not understand. Throughout the plea colloquy, the trial attorney saw no indications that anything was misunderstood by the appellee.
The appellee presented the testimony of two of his cell mates at the county jail who were eventually convicted of first degree murder. They both admitted speaking with the appellee about their testimony before the evidentiary hearing. The cell mates testified that they knew the appellee was taking Sine-quan because they saw the jail nurse dispense the medication to the appellee. One of the cell mates was also taking Sinequan. Both cell mates testified that after the appel-lee took the medication he became mellow and more agreeable. The cell mates testified that the appellee appeared to be “drowsy” and “woozie” and that the appellee appeared to be confused like he was drugged.
One cell mate testified that the appellee had talked to him about entering a guilty plea. This was about one week before entering the plea. The second cell mate testified that the appellee had also talked to him about his plea. This cell mate said that the appellee told him that someone wanted him to plead guilty to “25 I believe it was.”
The cell mates’ testimony was that the appellee was taking Sinequan and it made the appellee drowsy or confused. However, their testimony did not establish that the effect of the medication prevented the appel- *570 lee from understanding the nature of his plea, and appellee’s statement to one of them that he would serve less does not change this conclusion.
The only evidence presented that the ap-pellee did not understand the nature and consequences of his plea was the appellee’s own self-serving statement to that effect. That testimony was legally insufficient to support the trial court’s conclusion that the plea was involuntary. State v. Brest, 421 So.2d 638 (Fla. 3d DCA 1982) (defendant’s own conclusory and subjective statements that he was upset, confused, and frightened at the time he entered his guilty plea was legally insufficient to justify determination that plea was not knowingly and understandingly entered). The appellee testified that he did not remember executing the plea form and that he did not remember the context of the trial court’s questions.' However, contrary to those statements, the appellee also testified that he answered the trial court’s questions in accordance with his attorney’s instructions and that he understood what he was expected to answer.
The appellee failed to demonstrate through his own testimony and the testimony of the two cell mates that his mental or physical state was so impaired as to render him incompetent to plead. See Robinson v. Lockhart, 835 F.2d 1271 (8th Cir.1988), cert. denied, 487 U.S. 1238, 108 S.Ct. 2909, 101 L.Ed.2d 940 (U.S.1988); see also United States v. Teller, 762 F.2d 569 (7th Cir.1985). Based on the testimony of the state’s two expert witnesses and the appellee’s trial attorney who indicated the appellee was competent to testify, the fact that the appellee was present in court and the trial judge and the appellee’s counsel therefore had an opportunity to observe the appellee’s demeanor, and the fact that the appellee responded “no” to the trial court’s questions regarding whether he was under the influence of any mind altering substance, the appellee did not meet his burden.
Furthermore, the lapse of time between the guilty plea and the motion to withdraw the guilty plea is significant and a long delay most likely indicates dissatisfaction with the consequences of the plea. See United States v. Littlefield, 543 F.Supp. 420 (N.D.Fla.1982). In the instant case, the fact that over a year and a half elapsed from the time of the appellee’s guilty plea until the time he withdrew his plea is another factor in determining that the appellee was not impaired and was simply dissatisfied with his sentence.
Finally, I dissent to the trial court’s finding of ineffective assistance of counsel. A claim of ineffective assistance of counsel must meet a two prong test. The defendant must demonstrate that his attorney’s performance was deficient and that he was prejudiced by his counsel’s deficient performance. Johnson v. State, 593 So.2d 206 (Fla.1992), cert. denied, — U.S. -, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). In the instant case, there was no evidence that the appellee was prejudiced by his counsel’s performance.
The transcript of the plea colloquy shows that the appellee was asked by the trial court whether he was under the care of a doctor or taking any prescription medicine. The ap-pellee answered no. He was then asked if he had been treated for mental illness or for emotional problems and whether he was currently under the influence of alcohol or any mind altering substance. He answered no. Finally, the court asked if he fully understood what was going on and he said yes. Appellee’s defense counsel was aware that appellee had been prescribed Sinequan for depression by the county jail psychiatrist, yet allowed the misstatements by the appellee at the plea colloquy to remain uncorreeted. While the trial court found that defense counsel was deficient for failing to correct those misstatements, I nevertheless would reverse the finding of ineffective assistance because there was no evidence of prejudice to the appellee. Johnson, 593 So.2d at 210. As set out above, there was no evidence that the appellee did not understand the consequences of his plea other than his self-serving statements. The appellee merely showed that his defense counsel let his misstatements go uncorrected. The appellee made no showing as to how this prejudiced him.
I dissent from the affirmance and would reverse the granting of postconviction relief.