**Jesse HINES, Petitioner–Appellant,**

v.

**David MILLER, Superintendent, Respondent–Appellee.**

No. 01–2507.

United States Court of Appeals, Second Circuit.

Argued June 20, 2002.

Decided Jan. 24, 2003.

Mark Diamond, New York, NY, for Petitioner–Appellant.

Tami J. Aisenson, Assistant District Attorney (Robert M. Morgenthau, District Attorney for New York County, and Morrie I. Kleinbart, Assistant District Attorney, on the brief), New York, NY, for Respondent–Appellee.

Before: WALKER, Chief Judge, WINTER and F.I. PARKER, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Petitioner Jesse Hines appeals from the July 11, 2001 denial of a petition for a writ of habeas corpus by the United States District Court for the Southern District of New York (Lewis A. Kaplan, *District Judge*). In his petition, Hines's claimed that (1) he was denied due process by the state trial court's failure to appoint new counsel and hold a new hearing on his motion to withdraw his guilty plea; (2) he received ineffective assistance of counsel because his counsel coerced him to plead guilty; and (3) he received ineffective assistance of counsel by his counsel's failure to represent him on the motion to withdraw his plea. The district court rejected Hines's claims, but issued a certificate of appealability "limited to the questions [of] whether petitioner was (1) entitled, as a matter of constitutional law, to an evidentiary hearing, and (2) deprived of the effective assistance of counsel when he moved to withdraw his plea." *Hines v. Miller*, 156 F.Supp.2d 324, 333 (S.D.N.Y.2001) ("*Hines II*"). Hines renews his claims on appeal. While we affirm the district court's denial of the petition, we do so on different grounds.

## BACKGROUND

In early 1995, Hines was indicted for second degree murder and related weapons charges in connection with the shooting death of Earl Murray on January 23, 1994. During his interrogation with police detectives, Hines made oral, written, and videotaped statements in which he admitted killing Murray. Specifically, in a five-page hand-written statement, Hines admitted that a man named Mark offered him $1500 to shoot Murray and gave him a .38–caliber revolver. Hines explained that the offer "seem[ed] so good" to him because his mother had just passed away, his aunt had kicked him out of her house, and he could use the money to find an apartment. Moreover, Mark told him that he "would never get court [sic]" and "that as long as

I was with him I wouldn't get hurt." Hines, Mark, and Murray then went for a walk together, and when they were

> behind the back of 1695 [Madison Avenue] ... Mark said, "Go ahead remember the 1,500" and then I shot him. I shot him one time and Mark said, "Shoot again" but I couldn't do it. So I was standing there Earl began to fall and when he hit the floor Mark take his [cigarette] and [throw] it on Earl and then laugh. After that I run and drop the gun but I don't stop.

If convicted as charged, Hines faced a possible sentence of twenty-five to life. Hines's attorney engaged in extensive plea negotiations with the district attorney, who agreed to the minimum sentence of fifteen years to life if Hines pleaded guilty to the first count of the indictment charging murder in the second degree. To assist Hines in deciding whether to accept the plea offer, Hines's attorney arranged to show Hines his videotaped confession. The next day, June 13, 1996, Hines discussed the possibility of a plea with his aunt in the presence of the state court judge; his aunt apparently thought that "it would be good for" Hines to accept the plea offer. Immediately following this conversation with his aunt, Hines pleaded guilty to murder in the second degree. During the course of the plea proceedings, and prior to accepting the plea, the state trial court fully explained petitioner's rights to him. Hines specifically acknowledged that no one had forced him to plead guilty. The trial court then proceeded to question him about the crime, in response to which Hines admitted that he shot the victim with a gun on the date in question. The case was then set for sentencing.

Less than one week before sentencing, Hines filed a *pro se* motion to withdraw his plea on the ground that he was innocent and had been coerced into pleading guilty by his attorney. When the case came on for sentencing before the state trial court, defense counsel declined to comment on Hines's allegation that counsel had pressured him into pleading guilty, but asked to be relieved in the event the court allowed withdrawal of the plea. The prosecutor made a statement opposing the motion. In response to the prosecutor's statement, defense counsel noted that he was "at a great disadvantage to defend the defendant" and asked the court to be relieved and to have new counsel appointed to argue the motion on proper papers. The trial court did not relieve counsel. Rather than address the request, the trial court questioned Hines directly, pointing out that he had stated on the occasion of his guilty plea that no one had forced him to plead guilty. Hines responded that his counsel "wanted me to cop out" from the outset of the case, and that on the day his attorney showed him the videotape of his confession, his attorney told him "that I have no chance to win at trial, to cop out would be better for me." Hines went on to state that he was innocent of the crime and had only pleaded guilty "out of fear, pressure, extreme pressure." The state trial court then asked Hines whether he had spoken to his aunt before pleading guilty, and he responded, "Yes, I did. She thought it would be good for me to take the 15 too. So I took it but—." Noting that Hines had inculpated himself fully when he entered the guilty plea and that he had stated then that no one had forced him to plead guilty, the state trial court denied the motion and proceeded immediately to sentencing, imposing the agreed-upon term of fifteen years to life imprisonment.

Hines appealed to the Appellate Division, arguing that the denial of the motion to withdraw the plea without appointing new counsel and without conducting an

evidentiary hearing violated his right to due process of law under both the United States and New York Constitutions as well as the New York Criminal Procedure Law. Petitioner submitted a supplemental *pro se* brief in which he argued that he had received ineffective assistance of counsel, in violation of both federal and state constitutions, because, among other things, his attorney used a videotape of his confession to induce him to plead guilty.

The Appellate Division affirmed the conviction. *People v. Hines*, 267 A.D.2d 17, 698 N.Y.S.2d 491 (1999) ("*Hines I*"). Petitioner then applied for leave to appeal to the New York Court of Appeals, which was denied by order dated March 19, 2000. *People v. Hines*, 94 N.Y.2d 921, 708 N.Y.S.2d 360, 729 N.E.2d 1159 (2000).

Hines timely filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, arguing that he was deprived of his right to due process of law when the trial court denied his motion to withdraw his guilty plea without appointing new counsel or holding an evidentiary hearing and that he was deprived of the effective assistance of counsel.

### DISCUSSION

#### I. Standard of Review

■ We review the district court's denial of habeas corpus *de novo*. *Sellan v. Kuhlman*, 261 F.3d 303, 308 (2d Cir.2001).

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1217 (codified at, *inter alia*, 28 U.S.C. § 2254), a petition for a writ of habeas corpus may not be granted with respect to a state court decision that has "adjudicated [a petitioner's claims] on the merits" unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly es-

tablished Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). State court decisions that have not "adjudicated [claims] on the merits" are subject to the pre-AEDPA *de novo* standard of review. *See Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001). In *Washington*, issued shortly before the district court's decision in this case, we discussed the uncertainty of the meaning of the phrase "adjudicated on the merits" as used in § 2254. *Id.* at 52–55.

The district court, citing *Washington* and noting the brevity of the Appellate Division's memorandum decision, declined to decide whether the Appellate Division had adjudicated Hines's federal constitutional claims on the merits, concluding that the petition failed whether AEDPA's deferential standard or pre-AEDPA *de novo* review applied. *Hines II*, 156 F.Supp.2d at 328–29.

In *Sellan*, decided after the district court filed its opinion, we held that "adjudication on the merits" requires only that a claim be disposed of on the merits, as opposed to on a procedural or other ground, and that the state court need not refer to the federal claim or to federal law as a prerequisite to the deferential AEDPA standard under 28 U.S.C. § 2254(d)(1). *Sellan*, 261 F.3d at 312. In affirming Hines's conviction, the Appellate Division held that

> [a]fter a thorough inquiry, the court properly denied defendant's motion to withdraw his guilty plea. The record establishes that defendant made a voluntary plea and fails to substantiate his claims of coercion and innocence. The conduct by his attorney that defendant claimed to have been coercive amounted to nothing more than the attorney's professional opinion on the strength of the case and sound advice to plead guilty.

Defendant's claim of innocence was conclusory and was belied by his oral, written and videotaped confessions. Defense counsel properly declined to join in defendant's *pro se* motion to withdraw his plea since the motion lacked merit, and appointment of new counsel was not required (*People v. Simpson*, 238 A.D.2d 193, 656 N.Y.S.2d 724). We conclude that defendant received meaningful representation (*see People v. Ford*, 86 N.Y.2d 397, 404, 633 N.Y.S.2d 270, 657 N.E.2d 265). We have considered and rejected defendant's remaining claims. *Hines I*, 698 N.Y.S.2d at 491–92.

■ In light of *Sellan*, we conclude that Hines's claims were adjudicated on the merits. Accordingly, we hold that the state court's decision in this case should be reviewed under the AEDPA standard of deference. *See* 28 U.S.C. § 2254(d).

The Supreme Court has stated that under AEDPA's "unreasonable application" clause, habeas relief is warranted only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must also be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. As will be further explained, Hines's claims fail to meet this standard.

## II. Failure to Hold a Hearing

■ Hines argues that he was denied due process by the state court's refusal to hold an evidentiary hearing on his motion to withdraw his guilty plea. Although the basis for the motion to withdraw was that he was coerced by counsel to plead guilty, he argues that a hearing was required because there was significant evidence in the record of his actual innocence, referring to statements taken from several witnesses that indicated that Hines's co-defendant, rather than Hines, had committed the murder.

In rejecting the claim that Hines should have been given an evidentiary hearing on the withdrawal motion, the district court analogized to federal practice on plea withdrawal motions, noting that under Fed. R.Crim.P. 32(e), an evidentiary hearing is not mandatory. *Hines II*, 156 F.Supp.2d at 329–30. The district court then analyzed the due process claim under the balancing test developed for administrative proceedings in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Hines II*, 156 F.Supp.2d at 330–31. The district court concluded that while Hines's liberty interest and his interest in having a jury determine his guilt cut in favor of requiring a hearing, the failure to hold a hearing posed little risk of an erroneous decision because Hines raised no basis for vacating his plea that did not contradict his own prior statements made in open court, and the burden on the government of requiring evidentiary hearings on plea withdrawal motions like this one would be substantial and would significantly outweigh any conceivable benefit. *Id.*

Although not disputing the outcome in the district court, the state argues that the district court erroneously relied on *Mathews*. We agree. The Supreme Court has stated that it is inappropriate to employ the *Mathews* balancing test in criminal cases. *Medina v. California*, 505 U.S. 437, 442–46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Instead, "[t]he proper analytical approach" to deciding whether state crimi-

nal procedural rules violate due process is to determine if they " 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Id.* at 445, 112 S.Ct. 2572 (quoting *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)).

Both federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See, e.g., United States v. Avellino,* 136 F.3d 249, 260–61 (2d Cir. 1998); *United States v. Maher,* 108 F.3d 1513, 1529–30 (2d Cir.1997); *United States v. Williams,* 23 F.3d 629, 635 (2d Cir.1994); *United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992); *People v. Fiumefreddo,* 82 N.Y.2d 536, 605 N.Y.S.2d 671, 649–50, 626 N.E.2d 646, 674–75 (1993); *People v. Frederick,* 45 N.Y.2d 520, 410 N.Y.S.2d 555, 382 N.E.2d 1332, 1334 (1978). In light of these precedents, the failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice. Thus, under AEDPA's deferential standard and the Supreme Court's decision in *Medina,* the Appellate Division's conclusion that the state court had conducted a "thorough inquiry, . . . [and] properly denied defendant's motion to withdraw his guilty plea [where] [t]he record establishes that defendant made a voluntary plea and fails to substantiate his claims of coercion and innocence," *Hines I,* 698 N.Y.S.2d at 491, was not an unreasonable application of clearly established Federal law. Accordingly, we affirm the district court's rejection of this claim.

## III. Ineffective Assistance of Counsel Based on Coercion of Plea

On appeal, Hines appears to renew his claim from state court that he was denied effective assistance of counsel when his attorney coerced him to plead guilty. The district court, however, granted a certificate of appealability "limited to the questions of whether petitioner was (1) entitled, as a matter of constitutional law, to an evidentiary hearing, and (2) deprived of the effective assistance of counsel when he moved to withdraw his plea." *Hines II,* 156 F.Supp.2d at 333. Because the coercion claim was not included in the certificate of appealability, we do not have jurisdiction to review it here. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001) (holding that appellate jurisdiction is limited to the issues contained in the certificate of appealability).

## IV. Ineffective Assistance Based on Motion to Withdraw the Plea

With respect to his motion to withdraw his guilty plea, Hines argues that he received ineffective assistance of counsel based on his attorney's failure to represent him on the motion. The district court construed Hines's petition to argue that his motion to withdraw his plea based on his attorney's coercion created an actual conflict of interest that left him effectively unrepresented. *Hines II,* 156 F.Supp.2d at 331.

The district court, as discussed above, reviewed Hines's claim *de novo,* and rejected it on the grounds that (1) Hines's allegations of coercion did not create a conflict because counsel had not been ineffective in urging Hines to plead guilty, in light of his confessions and the favorable terms of the plea agreement; and (2) even if there had been an actual conflict, Hines could not show that his attorney's performance had been adversely affected because challenging the voluntariness of his plea was not a "plausible alternative defense strategy" that should have been pursued in light of his confessions and his

statements at the plea allocution. *Hines II*, 156 F.Supp.2d at 331–33.

Because, as we have stated, the state court's decision should have been analyzed under AEDPA's deferential standard, we need not decide whether the district court's analysis was correct. Instead, we focus on the reasonableness of the Appellate Division's decision, which held that (1) Hines's claims of coercion and innocence were not supported by the record; (2) his attorney did not coerce him, but simply gave him sound advice as to the strength of his case; (3) his attorney properly declined to join in the withdrawal motion; (4) appointment of new counsel was not required; and (5) Hines received meaningful representation. *Hines I*, 698 N.Y.S.2d at 491–92.

The Supreme Court has, of course, issued numerous opinions concerning various aspects of a defendant's right to counsel. *See e.g., Strickland v. Washington*, 466 U.S. 668, 684–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Coleman v. Alabama*, 399 U.S. 1, 7–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Mempa v. Rhay*, 389 U.S. 128, 134–37, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But the Court has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, i.e., as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea, *see, e.g., Coleman*, 399 U.S. at 7–11, 90 S.Ct. 1999; *Mempa*, 389 U.S. at 134–37, 88 S.Ct. 254, or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance, *see, e.g., Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708.

Several lower federal courts that have addressed facts similar to ours have viewed the issue at hand in the same way as the dissent does here: whether the failure to appoint substitute counsel on the motion to withdraw was a violation of the right to counsel. *See, e.g., United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997); *United States v. Sanchez–Barreto*, 93 F.3d 17, 20–23 (1st Cir.1996); *United States v. Garrett*, 90 F.3d 210, 212–13 (7th Cir.1996); *United States v. Attar*, 38 F.3d 727, 732–35 (4th Cir.1994); *United States v. Crowley*, 529 F.2d 1066, 1069–71 (3d Cir.1976); *United States v. Joslin*, 434 F.2d 526, 529–30 (D.C.Cir.1970).

Other courts, including ours, however, have applied *Strickland v. Washington, Cuyler v. Sullivan,* or a similar analysis to determine whether the defendant received ineffective assistance of counsel, and have generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a "plausible alternative defense strategy." *See, e.g., United States v. Morris*, 259 F.3d 894, 899 (7th Cir.2001); *United States v. Davis*, 239 F.3d 283, 285–88 (2d Cir.2001); *United States v. Moree*, 220 F.3d 65, 69–72 (2d Cir.2000); *Lopez v. Scully*, 58 F.3d 38, 41–43 (2d Cir.1995); *United States v. Craig*, 985 F.2d 175, 178–80 (4th Cir.1993); *United States v. Trussel*, 961 F.2d 685, 688–90 (7th Cir.1992); *Guzman v. Sabourin*, 124 F.Supp.2d 828, 833, 834–36 (S.D.N.Y.2000); *Fluitt v. Superintendent, Green Haven Corr. Facility*, 480 F.Supp. 81, 85–87 (S.D.N.Y.1979) (Weinfeld, J.).

And some courts have applied more than one analysis. *See, e.g., United States v. Caban*, 962 F.2d 646, 648–50 (7th Cir.1992) (analyzing as right to counsel, ineffective assistance, and under Rule 32); *United States v. Ellison*, 798 F.2d 1102, 1106–09

(7th Cir.1986) (analyzing under *Cuyler* and as denial of right to counsel).

Moreover, numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel. *See, e.g., Moree,* 220 F.3d at 69–72 (finding no conflict of interest); *Lopez,* 58 F.3d at 40–42 (finding motion was not a "plausible alternative defense strategy"); *Attar,* 38 F.3d at 735 (analyzing as denial of right to counsel but finding no abuse of discretion by district court where motion appeared to simply be dilatory tactic); *Craig,* 985 F.2d at 179–80 (finding no prejudice resulting from counsel's ineffectiveness); *Caban,* 962 F.2d at 649–50 (analyzing as denial of right to counsel but finding allegations unreliable under Fed.R.Civ.P. 32); *Trussel,* 961 F.2d at 688–90 (finding counsel was not shown to be ineffective); *Crowley,* 529 F.2d at 1069–71 (finding denial of right to counsel was harmless error); *Fluitt,* 480 F.Supp. at 85–87 (finding that there was no conflict or denial of counsel in light of frivolity of motion).

Given the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding—as the dissent does— that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. Accordingly, we affirm the district court's rejection of this claim.

## CONCLUSION

For the reasons set forth above, the judgment of the district court denying Hines's petition for a writ of habeas corpus is hereby **AFFIRMED**.

WINTER, Circuit Judge, dissenting.

I respectfully dissent.

At his sentencing hearing, appellant filed a motion to withdraw the plea of guilty he had entered eleven days earlier. The motion was a typical *pro se* filing, asserting in conclusory terms that he had been coerced by his counsel to enter the plea and was innocent. His counsel declined to aid in the presentation of that motion because of a perceived conflict of interest resulting from the coercion allegation. Counsel requested that new counsel be appointed to present the motion "on proper papers" and proffer "additional information that the defendant may wish to impart to the court." However, after perfunctory questioning of appellant, the court denied the plea withdrawal motion on the merits, ignoring the request for new counsel.

Under clearly established federal law, a motion to withdraw a guilty plea is a "critical stage" of a criminal proceeding, *United States v. Davis,* 239 F.3d 283, 286 (2d Cir.2001), and a defendant has a right to counsel, *id.* That rule, while clearly established, is not entirely unqualified. For example, where the trial court makes sustainable findings that the motion is frivolous and/or a dilatory tactic, or an appellate court finds the denial of counsel to have been harmless beyond a reasonable doubt, no constitutional error has occurred. However, none of these salutary qualifications is applicable here.

### a) *Background*

Appellant's motion asserted that he was innocent and that his earlier plea had been coerced by counsel. Believing that the claim of coercion created a disqualifying conflict of interest, counsel stated the following to the court:

May I be heard? I'm at a great disadvantage to defend the defendant, his actions, because he does point a finger at me claiming that I'm the one who caused him to plead guilty against his wishes. In fact he claims that he's not guilty. So I would ask that I be relieved and have another attorney appointed to proceed with moving this motion forward on proper papers and maybe some additional information that the defendant may wish to impart to the Court.

The court then engaged in a colloquy with appellant that is about one transcript page in length. The court's inquiry concerned the nature of the alleged coercion and verification that appellant had admitted guilt at the plea proceeding. Appellant stated that he had, against his expressed wishes, been pressured by counsel to plead guilty to get the minimum sentence and avoid an inevitable (in counsel's view) conviction. He conceded that he had admitted guilt in his plea, but proclaimed his innocence.

The court then stated that appellant's motion appeared to be "a pro forma motion" inconsistent with the plea colloquy and denied the motion. The court ignored the request to appoint new counsel and made no attempt to induce counsel to aid appellant with his motion. Appellant was then sentenced to the minimum sentence promised in the plea negotiations.

On appeal to the Appellate Division, new counsel filed a brief challenging the failure of the trial court to appoint new counsel to prepare and present the motion to withdraw the plea. The brief emphasized the claim of innocence and asserted the existence of specific exculpatory evidence that new counsel could have presented in support of the plea withdrawal motion. In particular, the brief recited that a confidential informant had stated to the police that one Taylor, who had been present at the murder and seems to have identified appellant as the killer, had himself admitted to the killing; that Taylor had made widely divergent statements about the event; and that another eyewitness, one McLloyd, had initially exculpated appellant and then recanted, but without actually identifying appellant as the killer.

The Appellate Division affirmed appellant's conviction, stating

[a]fter a thorough inquiry, the court properly denied defendant's motion to withdraw his guilty plea. The record establishes that defendant made a voluntary plea and fails to substantiate his claims of coercion and innocence. The conduct by his attorney that defendant claimed to have been coercive amounted to nothing more than the attorney's professional opinion on the strength of the case and sound advice to plead guilty. Defendant's claim of innocence was conclusory and was belied by his oral, written and videotaped confessions. Defense counsel properly declined to join in defendant's *pro se* motion to withdraw his plea since the motion lacked merit, and appointment of new counsel was not required (*People v. Simpson,* 238 A.D.2d 193, 656 N.Y.S.2d 724). We conclude that defendant received meaningful representation (*see, People v. Ford,* 86 N.Y.2d 397, 404, 633 N.Y.S.2d 270, 657 N.E.2d 265). We have considered and rejected defendant's remaining claims.

*People v. Hines,* 267 A.D.2d 17, 698 N.Y.S.2d 491, 491–92 (1999).

b) *The Ineffective Assistance Issues*

On the present record, an ineffective assistance of counsel issue arises as to whether counsel provided ineffective assistance in connection with the entering of the guilty plea, including the use of impermissible coercion. Under clearly established federal law, the issue is meritless.

Appellant's own colloquy with the trial judge demonstrates that counsel did no more than make a reasonable strategic decision that the weight of the evidence, in particular a videotaped confession, was such as to render a conviction more or less inevitable and that a plea bargain offer involving a statutory minimum sentence should be accepted. This advice, even if strongly rendered, was well within the range of reasonable professional judgment under *Strickland v. Washington,* 466 U.S. 668, 688–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and therefore not constitutionally deficient representation. *See generally id.* Appellant no doubt felt "coerced," as would anyone, guilty or innocent, in such circumstances, but that type of pressure does not invalidate a guilty plea. *See United States v. Juncal,* 245 F.3d 166, 172 (2d Cir.2001).

A second ineffective assistance issue might have arisen had counsel represented appellant on the plea withdrawal motion. A conflict may be created by a defendant's allegation of coercion by counsel in entering a plea that, if followed by a lapse in representation, would require appointment of new counsel. *Davis,* 239 F.3d at 287–88. However, a disqualifying conflict does not arise unless the alleged coercion amounts to more than strongly worded advice based on a reasonable, professional judgment. *Id.* at 286–87. In the present case, counsel informed the court that he perceived a disabling conflict arising from the allegations of coercion and requested the appointment of new counsel. When the court questioned appellant and he described his complaints about counsel, the perception of a disqualifying conflict of interest was dispelled. As noted, the problem was not improper conduct by counsel but appellant's dissatisfaction with the reasonable, professional advice given, a matter of no constitutional significance. *See id.* However, although the trial court

could then have ordered counsel to proceed to represent appellant on the portion of the motion to withdraw the plea related to the claim of innocence or at least offered counsel an opportunity to revise his opinion on the existence of a conflict, it did neither. Nor did the court appoint new counsel. Instead, without allowing counsel to speak again, it denied the *pro se* motion forthwith and proceeded immediately to sentencing.

c) *The Right to Counsel on a Motion to Withdraw a Guilty Plea*

As noted, appellant's motion was, from filing to disposition, a *pro se* effort. The Appellate Division itself noted that "counsel properly declined to join in defendant's *pro se* motion to withdraw his plea." *Hines,* 698 N.Y.S.2d at 491. It is also undeniable that a request for new counsel was made, specifically to present the motion "on proper papers" and to provide "additional information." The question therefore is whether the denial of the right to counsel with regard to preparing and presenting the motion to withdraw the guilty plea involved an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

Federal law is unambiguously clear that a defendant raising a claim of innocence on a plea withdrawal has a right to counsel under the Sixth Amendment and that there are no qualifications to this rule applicable to the present case. The Supreme Court has held that a criminal defendant is entitled to counsel at every "critical stage[ ]" of the proceeding. *Coleman v. Alabama,* 399 U.S. 1, 7, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *see also Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) ("Appointment of counsel for an indigent is required at every stage of a criminal proceeding where sub-

stantial rights of a criminal accused may be affected."). It has also held that the right to counsel applies equally to the trial and sentencing phases of a defendant's proceedings. *See Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) ("A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide to plead guilty than to an accused who stands trial.").

Given these clear directives from the Supreme Court, it is unsurprising that every federal court has concluded that a defendant has a right to counsel at a withdrawal-of-plea hearing. As we recently observed,

> "[I]t is well settled that a defendant's Sixth Amendment right to counsel attaches 'at all critical stages in the proceedings ....' It cannot be gainsaid that a defendant's guilty plea is the most critical stage of the proceeding as it forecloses his very right to a trial. Consequently, in the face of an allegedly involuntary plea, a plea withdrawal hearing is vital to ensuring the integrity of the process by which guilt may ultimately be determined. Given the occasionally complex standards governing plea withdrawals ... it would be unreasonable to expect a criminal defendant to navigate this area of law without the competent advice of counsel."

*Davis,* 239 F.3d at 285–86 (citations omitted). In *Davis,* we held that "the district court must provide the defendant with the effective assistance of conflict-free counsel for purposes of the plea withdrawal." *Id.* at 287. We then noted that "[o]ur frequent review of district courts' actions in this circuit confirms that the appointment of new counsel in such situations is the usual practice." *Id.* at 287–88 (citing six Second Circuit precedents).

Nor are other circuits confused or divided on this question. Every court of appeals that has faced the question has concluded that a plea withdrawal is a "critical stage" of the proceedings requiring the appointment of counsel. *See United States v. Sanchez–Barreto,* 93 F.3d 17, 20 (1st Cir.1996), *cert. denied,* 519 U.S. 1068, 117 S.Ct. 711, 136 L.Ed.2d 631 (1997); *United States v. Garrett,* 90 F.3d 210, 212 (7th Cir.1996); *United States v. White,* 659 F.2d 231, 233 (D.C.Cir.1981); *United States v. Crowley,* 529 F.2d 1066, 1069 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); *United States v. Joslin,* 434 F.2d 526, 529–30 (D.C.Cir. 1970).[1]

There are of course qualifications to the general rule that a plea withdrawal motion is a critical stage of the proceedings against a criminal defendant at which the defendant has a right to counsel. A number of lower federal courts have found no constitutional error when the lack of counsel was harmless. *See Crowley,* 529 F.2d at 1070–71 (finding harmless error where there were no factual or legal arguments on appeal not already presented in the

---

1. Indeed, the New York Appellate Division has concluded that defendants are entitled to counsel at a plea withdrawal because it is a "critical stage of the criminal process." *People v. Skelly,* 28 A.D.2d 728, 281 N.Y.S.2d 633, 634 (1967). I also note parenthetically that several other state courts considering the issue have reached the same conclusion. *See Berry v. State,* 630 So.2d 127, 129 (Ala.Crim. App.1993); *Lewis v. United States,* 446 A.2d 837, 841 (D.C.1982); *Fortson v. State,* 272 Ga.

457, 532 S.E.2d 102, 104 (2000); *People v. Holmes,* 12 Ill.App.3d 1, 297 N.E.2d 204, 206 (1973); *Martin v. State,* 588 N.E.2d 1291, 1293 (Ind.Ct.App.1992); *Beals v. State,* 106 Nev. 729, 802 P.2d 2, 4 (1990); *Randall v. State,* 861 P.2d 314, 316 (Okla.Crim.App. 1993); *Browning v. Commonwealth,* 19 Va. App. 295, 452 S.E.2d 360, 362 (1994); *State v. Harell,* 80 Wash.App. 802, 911 P.2d 1034, 1035 (1996).

district court). Moreover, in the recurring cases in which a defendant seeks to withdraw a plea of guilty based solely on a claim of ineffective assistance of counsel with regard to entering the plea, courts have implicitly or explicitly found the failure to appoint counsel to be harmless where advising the defendant to plead guilty was well within the range of reasonable professional advice and the alleged coercion amounted to no more than the defendant's dissatisfaction with that advice. *See United States v. Craig,* 985 F.2d 175, 179 (4th Cir.1993) (per curiam) (raising three claims of ineffective assistance, including coercion by counsel); *see also United States v. Trussel,* 961 F.2d 685, 690 (7th Cir.1992) (alleging counsel's erroneous advice rendered guilty plea not knowing and intelligent); *cf. United States v. Moree,* 220 F.3d 65, 69–72 (2d Cir.2000) (accusing counsel of coercing plea and ineffective assistance). In such cases, the trial court is well-situated to evaluate the quality of the advice given.

In a small number of other cases, harmless error has been found where, as here, the uncounseled withdrawal motion added a claim of innocence to that of ineffective assistance regarding the plea. In each, however, unlike the present case, the courts involved relied upon the fact that the plea allocution had included a particularized description of the crime and the defendant's role in it by the defendant in the plea allocution. *See Fluitt v. Superintendent, Green Haven Corr. Facility,* 480 F.Supp. 81, 83–85 (S.D.N.Y.1979) (finding defendant's guilty plea knowing and voluntary where defendant made detailed admission of guilt); *see also Lopez v. Scully,* 58 F.3d 38, 42–43 (2d Cir.1995) (finding plea withdrawal motion not a "plausible alternative defense strategy" where defendant had explained details of and motivations for crimes and concluding that second state hearing on plea with-

drawal unnecessary where district court had conducted full evidentiary hearing on the merits and defendant was represented by new counsel).

Finally, there is also caselaw suggesting that the denial of counsel on a plea withdrawal motion is permissible where there is a sustainable finding that a sophisticated defendant had deliberately created an ethical conflict with his attorney as a dilatory tactic. *See United States v. Attar,* 38 F.3d 727, 733–35 (4th Cir.1994).

None of these qualifications apply in the present circumstances with regard to the claim of innocence. To be sure, the denial of counsel was harmless as to the claim of a coercive plea because appellant's answers to the court's questions showed beyond any question that counsel did no more than give strong advice that was well within the range of reasonableness, albeit seeming to be defeatist and coercive to one facing serious criminal charges. However, on the present record, appellant's claim of innocence had some particularized factual support. The issue was never probed in the trial court's perfunctory colloquy with appellant, and the Appellate Division dismissed the claim of innocence as "conclusory," 698 N.Y.S.2d at 491, a portrayal that accurately describes the *pro se* motion but ignores the particularized representations by counsel on appeal regarding the existence of exculpatory evidence. The description of the motion as "conclusory" is accurate, therefore, only because the trial court declined the request for the appointment of counsel to present the motion with "additional information." Finally, there is nothing in the present record remotely suggesting that appellant was engaged in a sophisticated maneuver seeking to disqualify his attorney as a dilatory tactic.

My colleagues assert that federal courts have employed "many divergent ap-

proaches and outcomes ... to the facts at issue", Maj. Op. at [164], and that, therefore, "the Appellate Division's decision [did not] constitute[ ] an unreasonable application of clearly established federal law," *id.* Respectfully, I disagree.

As explained above, a plea withdrawal motion is a critical stage of a criminal proceeding in which there is a right to counsel. My colleagues assert that federal courts have sometimes applied right to counsel analysis and sometimes ineffective assistance analysis in cases factually similar to the present one. However, ineffective assistance analysis cannot be appropriate with regard to a *pro se* motion because there is no assistance of counsel to evaluate. Accordingly, the decisions cited as employing ineffective assistance analysis involve either: (i) circumstances in which the defendant was represented by counsel on the plea withdrawal motion and found not to have received ineffective assistance of counsel, *see United States v. Caban,* 962 F.2d 646, 648–50 (7th Cir. 1992); *cf. Moree,* 220 F.3d at 69–72; (ii) circumstances in which a defendant was represented on a plea withdrawal motion by conflicted counsel and in which a new hearing on the plea withdrawal motion with new counsel was ordered, *see United States v. Morris,* 259 F.3d 894, 899–900 (7th Cir.2001); *Davis,* 239 F.3d at 284–85, 288; *Guzman v. Sabourin,* 124 F.Supp.2d 828, 834–36 (S.D.N.Y.2000); (iii) a sustainable finding of no ineffective assistance with regard to the entry of the plea combined with a consequent, if implicit, finding of harmless error in the denial of counsel on the plea withdrawal motion, *see Lopez,* 58 F.3d at 41–42; *Craig,* 985 F.2d at 179; *Trussel,* 961 F.2d at 689–90; *Fluitt,* 480 F.Supp. at 86; or (iv) a justified denial of a continuance to retain new counsel where a plea motion is used by a sophisticated defendant to create a disqualifying conflict

with counsel as a dilatory tactic, *see Attar,* 38 F.3d at 733–35.

None of these cases demonstrate confusion or lack of clearly established federal law regarding the right to counsel on a plea withdrawal motion. They all recognize such a right and either enforce it, find the denial of counsel harmless, or hold the motion to be a deliberate dilatory tactic.

### d) *The Decision of the Appellate Division*

It should be emphasized that the decision of the Appellate Division did not suggest, as do my colleagues, that it found itself mired in a set of conflicting precedents. Rather, it regarded the law as settled. Its decision did find that appellant had "meaningful representation," 698 N.Y.S.2d at 491–92, but that is clearly a reference solely to the entering of the guilty plea because the decision also noted that appellant had to proceed *pro se* on the plea withdrawal motion. Its affirmance of the denial of the plea withdrawal motion was based on the fact that the *pro se* motion was "conclusory," *id.* at 491. While such a conclusion might be sustainable as a finding of harmless error in some roughly similar circumstances, the Appellate Division addressed the motion on its face and thereby ignored both original counsel's request for the appointment of new counsel to present "proper papers" and "additional information" and appellate counsel's specific representations as to exculpatory evidence. Indeed, the Appellate Division's decision contained an inaccurate description of the events in the trial court in stating that "[d]efense counsel properly declined to join in defendant's *pro se* motion ... since the motion lacked merit." *Id.* The stated reason for counsel's declining to join in was his perception of a conflict, not the lack of merit, and counsel asked for the appointment of new counsel.

**170**

The denial of counsel, therefore, cannot be excused either as harmless beyond a reasonable doubt—the "additional information" was never before the trial court and was ignored by the Appellate Division—or as a clever ploy by appellant to delay matters—nothing in the record suggests that appellant is sophisticated.

I therefore respectfully dissent.