Valerie **KRIMSTOCK, Charles Flatow, Ismael Delapaz, Clarence Walters, James Webb, Michael Zurlo, Sandra Jones, individually and on behalf of all other persons similarly situated, Plaintiffs–Appellants,**

v.

Raymond **KELLY, in his official capacity as Commissioner of the New York City Police Department, Property Clerk, New York City Police Department, the City of New York, District Attorneys for the City of New York, Defendants–Appellees.**

**Docket No. 05–6691–CV.**

United States Court of Appeals, Second Circuit.

Argued: June 21, 2006.

Decided: Sept. 15, 2006.

Thomas O'Brien, The Legal Aid Society, New York, New York, for Plaintiffs–Appellants.

Robert Hettleman, Assistant District Attorney (Alan Gadlin, Assistant District Attorney, on the brief), New York, New York, for Defendants–Appellees.

Before: JACOBS, POOLER, Circuit Judges, and KORMAN, District Judge.*

DENNIS JACOBS, Circuit Judge.

The Plaintiff class challenges the seizure and detention of vehicles by the City of New York. This appeal is taken from the most recent order issued in this long-running litigation, the December 6, 2005 "Amended Order" of the United States District Court for the Southern District of New York (Mukasey, *C.J.*), insofar as the order allows a district attorney to decide unilaterally that a vehicle seized pursuant to a warrantless arrest should be retained as potential evidence for a criminal proceeding. For the following reasons, we conclude that due process requires review by a neutral fact-finder. We therefore vacate the Amended Order and remand to the district court.

## BACKGROUND

This is the third time this Section 1983 action comes to this Court. Commenced in 1999, the action challenges the constitutionality of New York City's forfeiture statute, N.Y. City Admin. Code § 14–140. Six of the seven named plaintiffs were arrested for driving under the influence of drugs or alcohol; the seventh had her car seized after her estranged husband was arrested for drugs and weapons possession while using it. In all seven instances, the vehicles were seized as "instrumentalities of the crime," with a view to forfeiture. None of the vehicles was seized as "evidence"—*i.e.,* property that may be needed as evidence for a criminal prosecution.[1]

On November 13, 2000, the district court dismissed the action on the ground that the probable cause supporting an arrest constituted sufficient process to support the seizure and continued impoundment of a vehicle. This Court reversed in *Krimstock v. Kelly,* 306 F.3d 40 (2d Cir.2002) ("*Krimstock I* "), which held that due process requires a prompt hearing before a neutral fact-finder to test the probable validity of the deprivation *pendente lite,* including the probable cause for the initial warrantless seizure and the necessity and legitimacy of continued impoundment. *Krimstock I,* 306 F.3d at 69–70. We remanded for the district court [i] to decide plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and [ii] to fashion a post-seizure hearing process that rectifies the constitutional infirmities in New York's forfeiture statute.

---

\* The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. At the time of the seizure, if the arresting officer identifies the vehicle as possible evidence for the criminal proceeding, the vehicle is labeled "arrest evidence." *See* 38–A New York City Rules & Regulations ("R.C.N.Y.") § 12–31. If a district attorney subsequently determines that retention of the vehicle is necessary for a criminal prosecution, the vehicle is held as "trial evidence."

*Krimstock I* considered only the seizure and retention of vehicles for forfeiture as instrumentalities of crime. A footnote added that the parties "appear to agree that plaintiffs' vehicles were not seized as 'arrest evidence' pursuant to N.Y.C.Code § 14–140(b) but rather as instrumentalities of crime[,]" and that "[i]n any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case." *Krimstock I*, 306 F.3d at 69 n. 32.

On remand, the district court solicited the parties' views regarding the structure of a class and framing of appropriate relief. At that point, the issue arose as to vehicles seized as evidence. The plaintiffs asked that the district court apply any post-seizure relief procedures to *all* vehicle seizures; and the City asked the court to exclude vehicles seized as evidence. The City's argument was supported by the District Attorneys of the five counties of New York City and the Special Narcotics Prosecutor of the City of New York (collectively the "district attorneys").[2]

The district court's October 24, 2003 order (the "Initial Order") applied to all vehicles seized on or after January 23, 2004, and provided:

- At the time of seizure, the New York City Police Department must give written notice of the right to a hearing and a form to be used to request such a hearing;
- The claimant of a vehicle (either the owner or the person from whom the vehicle was seized) has the right to a

hearing within ten business days after receipt by the Police Department of a written demand for such a hearing;[3]

- The post-seizure hearings would be conducted by the Office of Administrative Trials and Hearings ("OATH"); and
- The Police Department has the burden of proving by a preponderance of the evidence that probable cause existed for the arrest of the vehicle's operator, that it is likely the City would prevail in an action to forfeit the vehicle, and that it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture.

Additional provisions were crafted to meet objections that the inclusion of vehicles seized as evidence would impair administration of the criminal law. Thus the Initial Order:

- Required that the Police Department give the relevant district attorney notice of OATH post-seizure hearings;
- Authorized OATH judges to order continued retention of vehicles when necessary to ensure their availability as evidence;
- Allowed the district attorney to seek a retention order from an OATH judge, a justice of the New York Supreme Court or a judge of the New York City Criminal Court;[4] and
- Provided that "no vehicle could be released without the driver waiving all claims and defenses in the criminal proceeding alleging a defect in the vehicle or other factual assertion based on the

---

2. At this point in the litigation, the district attorneys were not parties but they submitted letters as interested non-parties. The district attorneys intervened as parties to the action in November 2004, following our second remand.

3. The Initial Order required the City to give notice to all owners of vehicles held before

January 23, 2004 that their cars were held, but the Order did not otherwise extend the *Krimstock* process to those vehicles.

4. Although the Initial Order did not specify whether the retention order could be sought *ex parte,* this was the practice employed by district attorneys (as discussed below).

vehicle's condition at the time of seizure."

The City and district attorneys appealed, arguing that the provisions for a retention order and a waiver of defenses were inadequate to protect their interests. While the appeal was pending, we denied defendants' motion for a stay, so the Initial Order was in effect from January 23, 2004 until August 5, 2004. On August 5, 2004, we issued an opinion affirming the Initial Order as it relates to vehicles held for forfeiture but vacating and remanding the order as it relates to vehicles held as evidence. *Jones v. Kelly,* 378 F.3d 198, 199 (2d Cir.2004) ("*Krimstock II* "). Without ruling on the merits of the remedial order, we remanded because the district court had relied on assumptions about the impact of post-seizure hearings on prosecutions without testing the assumptions in an evidentiary hearing.

The district court conducted an evidentiary hearing on April 25, 2005, at which the district attorneys presented two witnesses. Maureen McCormick, Kings County Executive Assistant District Attorney and Chief of the Kings County Vehicular Crimes Bureau, described the procedures used to designate vehicles as potential evidence needed for a criminal proceeding, and the impact of the Initial Order and *Krimstock* process on prosecutions. Cheryl McCormick, Director of Legislative Affairs at the New York County District Attorney's Office, provided statistics on the numbers of cars released and retained by the district attorneys' offices and the nature and type of cases in which district attorneys sought to retain vehicles as evidence.[5] Plaintiffs presented no witnesses.

In an oral ruling on December 6, 2005, the district court found that the district attorneys' concern about the inclusion of trial evidence in the Initial Order "is legitimate"; that the designation of vehicles as trial evidence was conducted "cautiously, not contumaciously"; and that "the number of vehicles so designated is not insignificant and makes the order as heretofore constructed a potentially serious encumbrance to criminal prosecutions." Accordingly, the district court modified its Initial Order to provide that a *Krimstock* hearing would not go forward if the district attorney sends prior written notice to the OATH judge that the vehicle in question is needed as potential evidence in a pending criminal matter. Thus a district attorney could unilaterally decide that a vehicle is needed as evidence and forestall any hearing on the legitimacy of the arrest, seizure, and continued retention. The timing and hearing procedures in the Initial Order were otherwise unchanged.

Plaintiffs appealed.

## DISCUSSION

In *Krimstock II*, we explained that "the district court has broad discretion to ensure that the mandate of the prior decision of this Court is carried out." 378 F.3d at 204. Because the retention of a vehicle implicates both Fourth and Fourteenth Amendment rights, we analyze each in turn. *Krimstock I,* 306 F.3d at 48–60.

### A. The Fourth Amendment

No one disputes that plaintiffs' vehicles have been seized within the meaning of the Fourth Amendment; the issue is whether the seizure and continued impoundment is reasonable. *Krimstock I* accepted that the

---

**5.** Both witnesses have the last name McCormick. We have employed their full names throughout to avoid any confusion.

reasonableness of the arrest and seizure is satisfied by a police officer's determination that probable cause exists, but held that the probable-cause determination at the outset and the eventual civil forfeiture proceeding do not justify the interim impoundment of the vehicles for the months or years of limbo between an arrest and a forfeiture proceeding, *Krimstock I*, 306 F.3d at 50–51, and that reasonableness required prompt review by a neutral factfinder, *id.* at 67.

*Krimstock I* does not decide the present appeal: it dealt solely with vehicles being held for forfeiture, and the Court's analysis depended in part on the self-interest of the City in taking vehicles for forfeiture. *Id.* at 51. Courts have, however, subjected a prosecutor's assertion that evidence is necessary for a criminal investigation to scrutiny for reasonableness. For example, prior to the enactment of Federal Rule of Criminal Procedure 41(e) (now 41(g)), federal courts invoked their "general supervisory powers" to order the return of property seized under a valid search warrant if the United States Attorney could not establish the continuing need to hold it.[6] *In re Search Warrant for "Premises Known as Encore House"*, 100 F.R.D. 700 (S.D.N.Y.1983); *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297 (3d Cir.1978); *see also In re Smith*, 888 F.2d 167 (D.C.Cir.1989) (holding that, even though the prosecutor alleged that evidence was needed for a criminal proceeding, the district court had to evaluate this alleged need and to balance the government's interests against the claimant's interests). The courts in these cases ruled that the government may retain seized property for a reasonable time before instituting criminal proceedings, but that the

need for continued retention should be evaluated for reasonableness (weighing the competing interests) in light of less drastic means (such as a claimant's stipulation not to challenge the validity of a copy or duplicate).

In *Krimstock II*, we instructed the district court on remand to decide a number of factual issues regarding the reasonableness of the retention of a vehicle for evidence:

> Is the City's concern that criminal prosecutions will be encumbered by post-seizure hearings that include arrest evidence legitimate or imagined? Is the City contumacious or cautious? We cannot tell. Thus, we are compelled to remand this matter to the district court to establish a record of the actual number of vehicles involved in current prosecutions as trial evidence, and, perhaps, to compare relevant figures for past prosecutions over an appropriate period of time.... It may well be that the number of vehicles held as ... evidence has dwindled to so few that the order as currently constructed does not present an encumbrance to the prosecution of criminal cases, or that it is of such insignificance that [ ]evidence vehicles need not be included in the sweep of the order.

*Krimstock II*, 378 F.3d at 204.

At the evidentiary hearing, witness Cheryl McCormick posited some evidentiary uses of vehicles (for example, to rebut a defense theory that erratic movement was caused by vehicle malfunction, or to show the trajectory of bullet holes) and identified potential adverse consequences of requiring *Krimstock* hearings for vehicles

---

6. In 1989, Congress amended Fed.R.Crim.P. 41(e) to specifically provide that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." As noted, however, courts had provided this relief prior to this amendment through their own "supervisory powers."

held as evidence, including: [i] vehicles improperly released may become unavailable or inadmissible; [ii] an OATH determination may conflict with the retention order of a criminal court; [iii] a trial judge might limit the prosecution's use of the vehicle to what had been specified in the application for the retention order; [iv] a retention order or OATH hearing might be used by the defense to obtain discovery for the criminal proceeding; and [v] a waiver of defenses may not protect the prosecution from defenses raised later or by new counsel.

However, neither witness could identify a single instance in which an adverse consequence transpired during the nine months in which the Initial Order was in force. And they both conceded that it was not difficult to obtain a retention order to prevent the release of a vehicle, that all of the retention orders sought were granted—*ex parte,* without notice to the vehicle's owner or an opportunity to contest the order—and that the Initial Order had not yet encumbered any prosecutions.

That is unsurprising, because the feared adverse consequences are easily avoidable: [i] retention orders are readily available to avert spoliation; [ii] the *Krimstock* hearing process can specify that the order of a criminal court prevails in a conflict (as the Initial Order suggested); [iii] trial courts can be instructed that a prosecutor's use of vehicle evidence need not be limited to the purposes identified in the application for the retention order; [iv] retention orders

can be sought *ex parte* so criminal defendants cannot abuse the hearing to obtain discovery; and [v] enforceable waivers can be drafted and required.

The data presented by the witnesses confirm that no undue burden on criminal enforcement results from mandated review by a neutral fact-finder: 2,058 vehicles were classified as "arrest evidence" when the Initial Order took effect on January 23, 2004; of them, 249 (twelve percent) were later classified by prosecutors as "trial evidence" and just 20 (one percent) were actually presented at a criminal proceeding. Of the 3,301 vehicles seized as "arrest evidence" during the eight months the Initial Order was in effect (January 2004 to August 2004), only 204 (six percent) were later classified as "trial evidence" and none was presented at a criminal proceeding. The numbers are not large.[7]

◼ In holding that the Fourth Amendment does not require review of a district attorney's decision to retain a vehicle as potential evidence, the district court relied in part on footnote 23 of *Gerstein,* which cautions:

Criminal justice is already overburdened by the volume of cases and the complexities of our system. The processing of misdemeanors, in particular, and the early stages of prosecution generally are marked by delays that can seriously affect the quality of justice. A constitutional doctrine requiring adversary hearings for all persons detained pending

---

7. The statistics presented by defendants—and uncontroverted by plaintiffs—also indicate that district attorneys contested release or sought a retention order in only a small percentage of cases in which a *Krimstock* hearing demand had been made. In the period February through September 2004 (when the Initial Order was in effect), 141 of the vehicles seized in Kings County were the subject of *Krimstock* hearing demands and the Kings

County District Attorney contested release 26 times; similarly, there were 118 demands for *Krimstock* hearings in New York County, of which the New York County District Attorney contested 13. Additionally, district attorneys released large numbers of vehicles under their own internal release regulations. The Kings County District Attorney, for example, denied only 50 of the 442 requests received by that office.

trial could exacerbate the problem of pretrial delay.

420 U.S. at 122 n. 23, 95 S.Ct. 854. This observation was made, however, in the context of the Court's holding that probable cause to detain can be ascertained without a full-dress adversarial hearing. By the same token, we conclude that no full-dress adversarial hearing is required to review a prosecutor's unilateral determination that a vehicle is needed as potential evidence, and that district attorneys must be permitted to seek retention orders *ex parte* so that defendants cannot use the hearings for discovery or to restrict the prosecution's theories at trial.

## B. Fourteenth Amendment

■ Courts use the three-factor balancing test articulated in *Mathews v. Eldridge* "in deciding whether the demands of the Due Process Clause are satisfied where the government seeks to maintain possession of property before a final judgment is rendered." *Krimstock I*, 306 F.3d at 60; *see Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The test weighs: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest. *Krimstock I*, 306 F.3d at 60. In *Krimstock I*, we applied the *Mathews v. Eldridge* test and concluded:

> [T]he Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires that plaintiffs be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer to determine whether the

City is likely to succeed on the merits of the forfeiture action and whether means short of retention of the vehicle can satisfy the City's need to preserve it from destruction or sale during the pendency of proceedings.

306 F.3d at 67. Specifically, we found that (1) the private interest was strong given "[t]he particular importance of motor vehicles ... as a mode of transportation and, for some, the means to earn a livelihood", *id.* at 61, and the inability to remedy that hardship even if the claimant prevails at the forfeiture proceeding; (2) although the second factor favors the government, it lacks weight because "the risk of erroneous deprivation that is posed to innocent owners is a substantial one", *id.* at 62–63;[8] and (3) the government's interests in preserving the vehicle for future forfeiture proceedings and in preventing the vehicle from being used as an instrumentality in future crimes can be adequately protected by other means. *Id.* at 63–67.

### 1. Applicability of the Test

The district court noted the relevance of the *Mathews v. Eldridge* test to *Krimstock I*, but held that the test is inapplicable to vehicles seized as evidence in criminal cases: "the test has never been applied to the seizure of property for use as evidence at trial, and I do not see the occasion of applying it here." Rather, the district court held (and defendants contend) that "seizure and retention of evidence in pending criminal cases are governed [solely] by the Fourth Amendment and the procedures established specifically to govern criminal matters."

---

**8.** The reason this factor ultimately weighs in the government's favor is that in the majority of forfeiture cases, the vehicle is seized pursuant to a lawful DWI arrest or other misdemeanor or felony committed by the driver and owner of the vehicle. The risk that such arrests and seizures would be erroneous is reduced by the fact that officers are trained to recognize intoxication or criminal conduct.

However, the *Mathews v. Eldridge* test has been applied in the criminal context. In *United States v. Abuhamra*, 389 F.3d 309 (2d Cir.2004), this Court cited the *Mathews* test in holding that a defendant could not suffer detention pending appeal based on an *ex parte* showing. Thus *United States v. Romano*, 825 F.2d 725 (2d Cir.1987), used the *Mathews* test to assess the required procedures due at sentencing.[9]

The City and the district attorneys rely on *Hines v. Miller* for two propositions: that "the Supreme Court has stated that it is inappropriate to employ the *Mathews* balancing test in criminal cases," 318 F.3d 157, 161 (2d Cir.2003) (citing *Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992));[10] and that " 'the proper analytical approach' to deciding whether state criminal procedural rules violate due process is to determine if they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' " 318 F.3d at 161–62 (citing *Medina*, 505 U.S. at 445, 112 S.Ct. 2572). (Applying this approach, the *Hines* Court found that "[b]oth federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea" and that therefore the failure to provide such a hearing does not offend a deeply rooted or fundamental principle of justice.)

This case law is readily distinguishable. *Hines* and *Medina* considered challenges to the process afforded during criminal proceedings themselves. As the *Medina* Court explained, the Bill of Rights specifies the constitutional guarantees required in criminal proceedings regarding burdens of proof and process due; applying the vaguer notion of "due process" would be either redundant or inconsistent. *Medina*, 505 U.S. at 443, 112 S.Ct. 2572 ("The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order."). The present case involves no challenge to an underlying criminal proceeding or the procedural rights due the criminal defendant. Rather, it involves the deprivation of property *pending* a criminal proceeding; and the challenger may be an innocent owner who is no party to the criminal proceeding.

Defendants cite cases recognizing, mostly *in dicta*, that prosecutors are empowered to retain and preserve evidence for a potential criminal proceeding. *See, e.g., United States v. Edwards*, 415 U.S. 800, 806, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) ("When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine,

---

9. Defendants point out that *Abuhamra* and *Romano* involve "post-verdict liberty" issues, which are governed by no specific constitutional guarantee; but much the same can be said of the present case—the pre-trial property interest in a vehicle is likewise governed by no specific constitutional guarantee.

10. In *Hines*, this Court held that the *Mathews v. Eldridge* test was inapplicable to *Hines'*

claim that he should have been given an evidentiary hearing regarding his motion to withdraw his guilty plea. In *Medina*, the case relied upon in *Hines*, the Supreme Court held that the *Mathews* test was not the appropriate analytical framework for determining whether a state's allocation of the burden of proof in competency hearings comported with due process.

and preserve them for use as evidence.... Indeed, it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest."); *United States v. Robinson*, 414 U.S. 218, 230, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("the interest of the State in the person charged being brought to trial in due course necessarily extends, as well to the preservation of material evidence of his guilt or innocence, as to his custody for the purpose of trial"). However, as *Krimstock I* emphasized, vehicles are of particular importance, and do not bear analogy to clothing or other items of property. A prosecutor's right to retain material evidence necessary for trial does not mean that prosecutors can decide unilaterally that an automobile is material and its retention necessary.

### 2. Application of the Mathews v. Eldridge Test

■ The balance of factors relevant under the *Mathews v. Eldridge* test weighs in favor of having review by a neutral factfinder of a prosecutor's decision to retain a vehicle as potential evidence—although no adversarial hearing is required. [i] The private interest involved is as compelling here as it was held to be in *Krimstock I;* [ii] as in *Krimstock I,* the risk of an erroneous deprivation weighs in the government's favor, and is further mitigated here by the probable-cause requirement for the initial arrest and seizure, the requirement that the prosecutor affirmatively request retention of the vehicle, and the absence of any government self-interest in reaping the fruit of the forfeiture; and [iii] the government's interest in marshaling evidence is undoubtedly strong, though there is no record evidence that this interest has been or would be compromised by requiring prosecutors to seek a court order *ex parte* to justify the continued retention of a vehicle whose release has been demanded. The district court's conclusion that *any* judicial review (including *ex parte*) creates an unwarranted burden is unsupported by past events or by hypotheticals regarding the future.

The district court found (as the evidence reflects) that the district attorneys have acted in good faith, without abusing their retention power. Nonetheless, given the importance of a vehicle to an individual's ability to work and conduct the affairs of life (as Krimstock I explained), and the serious harm thus resulting from the undue retention of a vehicle by the government, some immediate judicial review of the retention is required.

### Conclusion

The Amended Order is vacated in part, and the case is remanded for further proceedings consistent with this opinion.